2020 IL App (2d) 170762-U
No. 2-17-0762
Order filed May 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-CF-290 |
| EDMOND W. ELLIS, | ) ) | Honorable James M. Hauser, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The cause was remanded for second-stage postconviction proceedings where the defendant's claim that he received ineffective assistance of counsel was neither frivolous nor patently without merit.

¶ 2    Following a jury trial, defendant, Edmond W. Ellis, was found guilty of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2004)) and armed robbery (720 ILCS 5/18-2(a)(4) (West 2004)).  Defendant appeals an order entered on August 18, 2017, denying his motion for leave to file a successive postconviction petition.  For the reasons that follow, we reverse and remand the cause for second-stage postconviction proceedings.

¶ 3                                     I. BACKGROUND

¶ 4     On September 17, 2004, defendant shot a man while robbing a convenience store. The victim survived. In March 2005, defendant was found guilty of attempted first-degree murder and armed robbery. This is the sixth time that defendant's case has come before this court. The sole issue in this appeal is whether one of defendant's claims in his April 10, 2017, postconviction petition warrants remanding the cause for second-stage proceedings.[1] We will limit our recitation of the facts to what is necessary to understand defendant's claim.

¶ 5     Sentencing defendant proved to be a complicated matter. This was due to the evolving legal landscape regarding the constitutionality of the 25-year-to-life sentencing enhancements for personally discharging a firearm during the commission of an offense and proximately causing great bodily harm. When defendant was originally charged, convicted, and sentenced, the 25-year-to-life firearm enhancement was unconstitutional as it related to the offense of attempted first-degree murder (see *People v. Morgan*, 203 Ill. 2d 470, 491-92 (2003)) but constitutional as it related to the offense of armed robbery (see *People v. Moss*, 206 Ill. 2d 503, 532 (2003)). Consistent with the state of the law at the time, the trial court sentenced defendant in April 2005 to 45 years in prison for armed robbery (20 years as a baseline plus a 25-year firearm enhancement), to be served concurrently with a 20-year sentence for attempted first-degree murder.

_____

[1] Defendant raises a second issue in his appellant's brief: whether the unconstitutional sentencing scheme in the armed robbery statute can be severed from the substantive offense. Defendant concedes in his reply brief that his argument is foreclosed by our decision in *People v. Allgood*, 2019 IL App (2d) 160810.

¶ 6    The law subsequently changed.  In *People v. Sharpe*, 216 Ill. 2d 481, 519 (2005), our supreme court overruled cases, such as *Morgan*, which had used the "cross-comparison" test to invalidate sentences based on the proportionate penalties clause of the Illinois Constitution.  One consequence of the decision in *Sharpe* was that the 25-year-to-life firearm enhancement was now constitutional as it related to the offense of attempted first-degree murder.  The 25-year-to-life firearm enhancement relating to the offense of armed robbery, however, was ruled unconstitutional in another case under the still-viable "identical elements" test.  *People v. Harvey*, 366 Ill. App. 3d 119, 130 (2006).

¶ 7    In light of these changes in the law, in February 2010, the trial court granted defendant's petition to vacate his sentences pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)).  In July 2011, the court resentenced defendant to a cumulative 45-year prison sentence; the court reached that result by applying a 25-year firearm enhancement to defendant's attempted first-degree murder sentence instead of his armed robbery sentence.  Specifically, the court sentenced defendant to 45 years in prison for attempted first-degree murder, to be served concurrently with a 20-year sentence for armed robbery.  In September 2012, we vacated defendant's sentence for attempted first-degree murder because he was not charged with an enhancing factor for that offense and because such enhancement was never submitted to the jury.  *People v. Ellis*, 2012 IL App (2d) 110815-U, ¶¶ 11, 13.  We remanded the matter for resentencing only with respect to the attempted first-degree murder conviction.  *Ellis*, 2012 IL App (2d) 110815-U, ¶ 13.

¶ 8    Pursuant to our mandate, on June 27, 2013, the trial court sentenced defendant on the attempted first-degree murder conviction for the third time.  The court sentenced defendant to 25 years in prison.  The court found that defendant's conduct caused serious bodily injury to the

victim, such that defendant's sentence must run consecutive to his existing 20-year sentence for armed robbery. See 730 ILCS 5/5-8-4(d)(1) (West 2018) (requiring consecutive sentencing where "[o]ne of the offenses for which the defendant was convicted was *** a Class X *** felony and the defendant inflicted severe bodily injury"). Thus, for the third time, defendant was given a cumulative sentence of 45 years in prison. In March 2014, we affirmed this sentence. *People v. Ellis*, 2014 IL App (2d) 130754-U, ¶ 40.

¶ 9     On December 8, 2014, defendant filed a petition pursuant to section 2-1401 of the Code. In that petition, defendant for the first time alleged ineffective assistance of trial counsel in connection with a February 2005 plea offer that he rejected. On August 18, 2017, the trial court (1) denied defendant's April 10, 2017, motion to recharacterize this petition as a successive postconviction petition, and (2) dismissed the 2-1401 petition on the State's motion.

¶ 10     Meanwhile, on April 10, 2017, defendant filed both a motion for leave to file a successive postconviction petition and a "petition for post-conviction relief." Only defendant's fifth claim in that petition is relevant to this appeal. Defendant attached a February 23, 2005, letter from the State's Attorney to defendant's counsel that provided as follows:

> "We have not made an offer in regard to the above. Upon a plea of guilty to Armed Robbery, we would dismiss the Attempt Murder and Resisting.[2] This plea could be blind or we would agree to a cap of 35 years.
>
> Since 720 ILCS 5/18-2(a)(4) and its class X plus 25 to life has been upheld in [*People v. Moss*, 206 Ill. 2d 503 (2003)], if convicted of Armed Robbery as he is now

---

[2] The charge for resisting a peace officer was charged separately and is not relevant to this appeal.

charged, the minimum sentence would be 31 years and the maximum sentence would be life.

In view of the nature of the offense and the evidence that is pointing toward Mr. Ellis, we believe this is a reasonable offer.

Please advise."

Defendant acknowledged in his petition that his trial counsel forwarded this offer to him. Defendant claimed, however, that his counsel "failed to advise him of the potential sentencing exposure, especially that if found guilty on both counts he would be subjected to mandatory consecutive sentencing." According to defendant, "had trial counsel properly advised him of the potential sentencing exposure, in that, if convicted of both armed robbery and attempt murder he would be subjected to mandatory consecutive sentencing, [he] would have accepted to [*sic*] offer to plead guilty to Armed Robbery in exchange for the dismissal of the Attempt Murder charge." Defendant maintained that, absent his counsel's deficient performance during the plea negotiating process, there was a " 'reasonable probability' that [he] would have accepted the plea, entered a guilty plea on the Armed Robbery, avoided a jury trial, and only would have been exposed to a sentencing range of 6 to 30 (max) years imprisonment." Instead, defendant claimed, he rejected the plea offer, he opted for a jury trial where "the defense was weak," and he was "subjected to mandatory consecutive sentencing with a sentencing range of 12 to 60 years imprisonment."[3]

¶ 11     Immediately after mentioning that his defense was weak, however, defendant criticized the

_____

[3] In calculating his sentencing exposure in his petition, defendant did not factor in the 25-year-to-life sentencing enhancement that the trial court would have been required to impose according to the case law that was in effect at the time that defendant was originally sentenced.

State's use of supposedly "inconclusive" forensic evidence and questionable eyewitness testimony. Defendant asserted that, in light of the imperfections in the State's evidence, there was a reasonable probability that the State would not have canceled his guilty plea to the offense of armed robbery.[4] Defendant further alleged that the trial court would have "lacked the authority to prevent" him from pleading guilty to one charge while the State dismissed the other charge.

¶ 12    On August 18, 2017, the trial court denied defendant's motion for leave to file a successive postconviction petition. Although the court did not individually address defendant's claim of ineffective assistance of counsel during the plea-negotiation process, the court determined generally that defendant "failed to allege sufficient facts and submit sufficient documentation to satisfy the cause and prejudice test." Defendant timely appealed.

¶ 13                                II. ANALYSIS

¶ 14    According to defendant, the trial court incorrectly construed his April 10, 2017, petition as a successive postconviction petition. He argues that the petition was an initial postconviction petition and that it presented an arguable claim that his trial counsel was ineffective for failing to advise him during plea negotiations that his sentences would be consecutive. In the alternative, defendant contends that he established cause and prejudice for filing a successive petition. Under either scenario, defendant proposes that the case must be remanded for second-stage

_____

[4] To show prejudice in connection with a claim of ineffective assistance of counsel, a defendant must establish, *inter alia*, that there was "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

postconviction proceedings.

¶ 15    The State recasts the issue on appeal as whether "the trial court properly declined to grant the defendant's motion to recharacterize his petition for relief from judgment as a post-conviction petition."  In the State's view, because this same ineffective-assistance claim was included in the section 2-1401 petition that defendant filed on December 8, 2014, and because the trial court refused to recharacterize that petition as a successive postconviction petition, there is a serious question as to whether the subject claim "properly exists as part of an independent post-conviction petition."  The State maintains that the trial court's denial of defendant's motion to recharacterize his 2-1401 petition "should preclude considering it as a post-conviction claim."

¶ 16    With respect to the merits of defendant's ineffective-assistance claim, the State argues that, because defendant appeared *pro se* at his third sentencing hearing in June 2013, nothing precluded him from bringing the subject claim to the court's attention at that time and then raising it during his *pro se* direct appeal.  Furthermore, the State asserts that defendant's contention that he rejected the plea offer only because he was not aware of consecutive sentencing "strains credibility" and is refuted by the record.

¶ 17    The Post-Conviction Hearing Act (Act) provides a method whereby a person imprisoned in the penitentiary may assert that his or her conviction was the result of a substantial denial of his or her constitutional rights.  725 ILCS 5/122-1(a)(1) (West 2018).  An action under the Act is a collateral attack on the trial court proceedings rather than an appeal from the judgment of conviction, so "issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised but were not are forfeited."  *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 18    At the first stage of a postconviction proceeding, the trial court independently reviews the petition, taking the allegations as true (*Tate*, 2012 IL 112214, ¶ 9), to determine whether the

petition is "frivolous or *** patently without merit" (725 ILCS 5/122-2.1(a)(2) (West 2018)). The court may summarily dismiss a petition as frivolous or patently without merit only if it has "no arguable basis either in law or in fact." *Tate*, 2012 IL 112214, ¶ 9. While the petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" (725 ILCS 5/122-2 (West 2018)), the threshold for surviving the first stage is low (*People v. Hodges*, 234 Ill. 2d 1, 9 (2009)). The defendant must set forth only the "gist" of a constitutional claim, which means that the petition contains "enough facts to make out a claim that is arguably constitutional." *Hodges*, 234 Ill. 2d at 9.

¶ 19    At the second stage of a postconviction proceeding, the court may appoint counsel for an indigent defendant (725 ILCS 5/122-4 (2018)), and the court must determine whether the defendant has made " 'a substantial showing of a constitutional violation.' " *Tate*, 2012 IL 112214, ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If the defendant fails to meet that burden, the court must dismiss the petition; if the defendant meets his burden, the matter proceeds to the third stage for an evidentiary hearing. *Tate*, 2012 IL 112214, ¶ 10.

¶ 20    The Act contemplates a single postconviction proceeding (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant must obtain leave of court before filing a successive petition (725 ILCS 5/122-1(f) (West 2018)). One way that a defendant may demonstrate his entitlement to file a successive petition is by satisfying the "cause-and-prejudice" test. "Cause" refers to "an objective factor that impeded [the defendant's] ability to raise a specific claim during his or her initial post-conviction proceedings," and "prejudice" means that the claim at issue "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 21    We review *de novo* an order summarily dismissing a postconviction petition. *Hodges*, 234

Ill. 2d at 9. We likewise review *de novo* an order denying leave to file a successive petition. *People v. Johnson*, 2020 IL App (2d) 170646, ¶ 8.

¶ 22     We first address the State's argument that the trial court's refusal to recharacterize defendant's December 8, 2014, section 2-1401 petition as a postconviction petition precludes review of defendant's claim in his proposed postconviction petition. The trial court dismissed the 2-1401 petition on the State's motion after denying defendant's April 10, 2017, motion to recharacterize that petition as a successive postconviction petition. Separately, but within the same order, the court denied defendant's April 10, 2017, motion for leave to file a successive postconviction petition. Thus, contrary to what the State suggests, at least in the trial court's view, defendant's motion for leave to file a successive postconviction petition was separate from his motion to recharacterize his previously filed section 2-1401 petition as a postconviction petition. Accordingly, the trial court's refusal to recharacterize defendant's 2-1401 petition does not preclude review of the court's other decision to deny leave to file a successive postconviction petition.

¶ 23     The second preliminary issue is whether defendant is precluded from raising his ineffective-assistance claim because he could have raised that claim earlier. The State maintains that, because defendant appeared *pro se* at his third sentencing hearing in June 2013, nothing prevented him from bringing that claim to the trial court's attention at that time and then raising it during his *pro se* direct appeal.

¶ 24     The first two times that defendant was sentenced, he was ordered to serve his sentences concurrently. On both of those occasions, he was sentenced to a cumulative total of 45 years in prison, which included a 25-year firearm enhancement. Due to the way that the law evolved after defendant was originally tried and sentenced, by the time of the third sentencing hearing, which

was limited to resentencing on the attempted first-degree murder conviction, the trial court was precluded from applying any firearm enhancement. At that sentencing hearing, the State argued that the court should retain defendant's cumulative 45-year prison sentence by making a finding, pursuant to section 5-8-4(d)(1) of the Unified Code of Corrections, that defendant inflicted "severe bodily injury," thus mandating consecutive sentencing. 730 ILCS 5/5-8-4(d)(1) (West 2018).[5] Defendant, who appeared *pro se*, argued that consecutive sentencing was unwarranted. Pursuant to the State's recommendation, the court found that defendant inflicted severe bodily injury, thus requiring consecutive sentencing. The court fashioned a sentence that again resulted in a cumulative total of 45 years in prison. Defendant appealed his sentence, and we affirmed the judgment on direct appeal. *Ellis*, 2014 IL App (2d) 130754-U, ¶ 40.

¶ 25    Under these circumstances, we reject the State's contention that defendant was required to have raised his ineffective-assistance-of-counsel claim at the June 2013 sentencing hearing. Any argument that his trial counsel was ineffective for failing to advise him that his sentences would be served consecutively would have been premature until the trial court made the factual finding that mandated consecutive sentencing. Nor would it have been appropriate for defendant to have raised his ineffective-assistance claim on direct appeal following that sentencing hearing, given that his claim depended on facts that were outside of the record. See *People v. Veach*, 2017 IL 120649, ¶ 46 (ineffective-assistance claims are better suited to collateral proceedings "when the record is incomplete or inadequate for resolving the claim"); *People v. Barkes*, 399 Ill. App. 3d 980, 986 (2010) (the defendant's allegations of ineffective assistance of counsel, which were based

---

[5] At the time of defendant's original sentencing hearing, this provision was contained in section 5-8-4(a)(i) of the Unified Code of Corrections. 730 ILCS 5/5-8-4(a)(i) (West 2004).

on what his counsel told him or failed to tell him, were outside the record and could not have been raised on direct appeal). Thus, defendant's claim is not procedurally forfeited.

¶ 26 The third preliminary issue is whether we should treat defendant's April 10, 2017, petition as an initial postconviction petition or as a successive petition. Defendant submits authority supporting his argument that, even though he filed postconviction petitions in the past, we should treat his April 10, 2017, petition as an initial petition because it was the first petition that he filed after he was resentenced in 2013. See *People v. Inman*, 407 Ill. App. 3d 1156, 1162 (2011). The State does not address *Inman*, nor does the State explicitly dispute that we should treat defendant's petition as an initial petition. It could be argued that defendant invited any error in treating his petition as a successive petition when he expressly asked the court for leave to file a successive postconviction petition. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (a defendant " 'may not request to proceed in one manner and then later contend on appeal that the course of action was in error' ") (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)). The State, however, does not make an invited-error argument, and "[t]he doctrine of forfeiture applies to the State as well as to the defendant." *People v. Lucas*, 231 Ill. 2d 169, 175 (2008). We thus treat defendant's claim as an initial postconviction petition. For the following reasons, we hold that defendant's petition met the low threshold for advancing to the second stage.

¶ 27 Criminal defendants are entitled to effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). This includes the right to effective assistance of counsel when deciding whether to reject a plea bargain offered by the State. *People v. Curry*, 178 Ill. 2d 509, 518 (1997), abrogated on other grounds by *People v. Hale*, 2013 IL 113140, ¶ 20. A violation of the right to effective assistance during plea negotiations is not cured by a subsequent fair trial. *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33. Claims of ineffective assistance

related to the plea-bargaining process are subject to the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hale*, 2013 IL 113140, ¶ 15. This means that a defendant must show that (1) "his attorney's assistance was objectively unreasonable under prevailing professional norms" and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Curry*, 178 Ill. 2d at 519 (quoting *Strickland*, 466 U.S. at 694).

¶ 28 For purposes of *Strickland*'s first prong, "a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged." *Curry*, 178 Ill. 2d at 528; see also *Williams*, 2016 IL App (4th) 140502, ¶ 33 (a criminal defendant has a "constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State"). Here, defendant acknowledges that his trial counsel timely advised him of the State's February 23, 2005, offer. In its letter, the State proposed dismissing defendant's attempted first-degree murder charge in exchange for either a blind guilty plea to the armed robbery charge or a guilty plea to the armed robbery charge with a 35-year sentencing cap. Defendant alleged in his postconviction petition that his counsel failed, however, to advise him that he was subject to mandatory consecutive sentencing if he was convicted of both attempted first-degree murder and armed robbery. Defendant asserted that he was unaware of his potential sentencing exposure when he rejected the State's offer.

¶ 29 We must take these allegations as true for purposes of this appeal. *Hodges*, 234 Ill. 2d at 10. We note that the State does not identify anything in the record that contradicts defendant's allegation that he was not advised that he was subject to consecutive sentencing. Nor does the State explicitly dispute that defendant's allegations satisfied the first prong of *Strickland* for

purposes of first-stage postconviction pleadings. Accordingly, defendant's claim that his counsel acted unreasonably by failing to advise him of his potential sentencing exposure is neither frivolous nor patently without merit.

¶ 30 With respect to the second prong of *Strickland*, the Supreme Court has established the following test:

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

Our supreme court has recognized that this test is binding on Illinois courts, because we must follow the Supreme Court's interpretation of the Federal Constitution. *Hale*, 2013 IL 113140, ¶ 20.

¶ 31 In his postconviction petition, defendant alleged all of the elements that are necessary to establish prejudice. He alleged that, "had it not been for trial counsel's deficient performance during the plea negotiating process, there is a 'reasonable probability' that [he] would have accepted the plea." He further alleged that, due to certain weaknesses in the State's evidence, there was "a reasonable probability that the guilty plea for Armed Robbery would have been

entered to the dismissal of the Attempt Murder charge without the State canceling it." Defendant also alleged that "the trial court lacked the authority to prevent a defendant from pleading guilty to a particular charge and the State's dismissal of a particular charge." With respect to the final element required to show prejudice under *Frye*, defendant alleged that his plea would have resulted in the attempted first-degree murder charge being dismissed and that he would have been subjected to a lesser sentencing range than if he had gone to trial and been convicted of both offenses. These allegations sufficed to justify further postconviction proceedings. See *Barkes*, 399 Ill. App. 3d at 992 (where the defendant alleged that (1) his counsel did not inform him that he faced mandatory consecutive sentences if convicted, (2) he was never told that consecutive sentences were mandatory, and (3) had he known this information, he likely would have accepted the State's offer of 25 years in prison, the trial court erred in dismissing the defendant's petition at the second stage of postconviction proceedings).

¶ 32    The State argues that the record contradicts defendant's allegation that there was a reasonable probability that he would have accepted the plea offer but for counsel's deficient performance. The State points to defendant's September 30, 2004, arraignment, where the court admonished defendant as follows:

"The crime of armed robbery is a Class X offense. It is punishable by not less than six nor more than 30 years in the Illinois Department of Corrections. There is no probation for this crime. There is three years parole on that. If you have a Class X or greater conviction in your background, that 30 could jump to 60 years in the Department of Corrections. However, the attempt first degree murder is a special Class X. The bottom is 20 years. There is nothing below 20 years for attempt murder. The top is 80 years. And if there is serious bodily injury to the victim, it could run at 85 percent, that is, 20 years would be 17

- 14 -

years with good time as a minimum sentence.  There is a minimum of three years parole

on that.  The fine is zero to $25,000 on each of those.  That's the range of penalties you are

subject to if convicted of the crime of attempt murder or armed robbery."

According to the State, in light of the trial court's comment during the arraignment that the attempted first-degree murder charge could result in an 80-year sentence to be served at 85%, it "strains credibility" for defendant to now assert that he rejected the State's February 2005 offer only because his attorney failed to advise him that the sentences would be served consecutively if he were convicted of both offenses.

¶ 33    Although that may be the case, the problem with the State's position is that courts may not make credibility determinations at the first stage of postconviction proceedings.  *People v. Borizov*, 2019 IL App (2d) 170004, ¶ 11.  Certainly, defendant was on notice that he was facing a potential prison sentence that greatly exceeded the 35 years that the State offered him in February 2005. That was clear both from the court's comments during the arraignment and from the State's February 2005 letter.  Indeed, the State correctly informed defendant in its letter that he faced a life sentence on the armed robbery charge alone due to the firearm enhancement.  Given that defendant elected to proceed to trial in the face of a potential sentence of life in prison, there is reason to doubt whether it would have made any difference to him that he also faced the possibility of consecutive sentencing.  Defendant, however, was entitled to know the ramifications of rejecting the State's offer.  The trial court did not mention during the arraignment that defendant faced the possibility of consecutive sentencing.  Nor does the State direct our attention to any portion of the record where defendant was explicitly advised of the minimum sentences that he faced if he were convicted of both offenses.  Under these circumstances, defendant's allegations

of ineffective assistance are not positively refuted by the court's admonishments during the arraignment.

¶ 34　　We determine that defendant has alleged a claim of ineffective assistance of counsel that withstands the low pleading threshold at the first stage. Accordingly, we reverse the portion of the trial court's August 18, 2017, order addressing defendant's April 10, 2017, postconviction petition. The cause is remanded for second-stage postconviction proceedings.

¶ 35　　　　　　　　　　　　III. CONCLUSION

¶ 36　　For the reasons stated, the trial court's judgment is reversed, and the cause is remanded for second-stage postconviction proceedings.

¶ 37　　Reversed and remanded.