2016 IL App (4th) 140502

NO. 4-14-0502

FILED
May 11, 2016
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JAMES WILLIAMS, JR., | ) | No. 04CF760 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Patrick W. Kelley, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1        This appeal arises from the trial court's May 2014 second-stage dismissal of an amended petition that defendant, James Williams, Jr., raised under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2012)).  In his October 2012 amended postconviction petition, defendant argued, in pertinent part, that he was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State.  Specifically, defendant contended that his counsel failed to accurately inform him of the possible penalties he faced on the State's charges for (1) attempt (first degree murder) (720 ILCS 5/8-4, 9-1(a)(1) (West 2004)), (2) unlawful use of a weapon by a felon (720 ILCS 5/24.1-1(a) (West 2004)), and (3) attempt (armed robbery) (720 ILCS 5/8-4, 18-2(a)(2) (West 2004)).  Defendant claimed that, as a result of counsel's failure, he rejected the State's 18-year guilty-plea offer and, instead, proceeded to trial where a jury found him guilty of all three charges.  The trial court later imposed an aggre-

gate sentence of 45 years in prison.

¶ 2     Defendant appeals, arguing that the trial court erred by dismissing his amended postconviction petition because he had alleged a substantial showing of a constitutional violation. We agree and reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4     In July 2005, a jury convicted defendant of (1) attempt (first degree murder) (count I), (2) unlawful use of a weapon by a felon (count II), and (3) attempt (armed robbery) (count III). In September 2005, the trial court imposed consecutive prison terms of 30 years on count I and 15 years on count III. The court also imposed a 5-year sentence on count II, which it ordered defendant to serve concurrently to his aggregate 45-year sentence.

¶ 5     Defendant appealed, and this court affirmed, rejecting defendant's only claim that his counsel was ineffective for failing to file a pretrial motion to sever the unlawful-use-of-a-weapon charge from the State's remaining charges. *People v. Williams*, No. 4-05-0997 (Apr. 13, 2007) (unpublished order under Supreme Court Rule 23).

¶ 6     In July 2008, defendant *pro se* filed a postconviction petition. In September 2008, the trial court appointed counsel to represent defendant. Shortly thereafter, the State filed a motion to dismiss defendant's postconviction petition. In September 2012, postconviction counsel filed an amended postconviction petition in accordance with Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012). Although defendant's amended postconviction petition raised several claims, pertinent to this appeal is the allegation that defendant was denied the effective assistance of counsel during guilty-plea negotiations with the State. Specifically, defendant's amended postconviction petition, which incorporated defendant's claim from his June 2008 affidavit filed in support of his *pro se* postconviction petition, alleged the following:

- 2 -

"My attorney[,] *** Matthew Maurer, [explained that] I could face up to 30 years at 50% on the attempt first degree murder charge. On count [II,] I was looking at [five] years. And on count [III], I was looking at 4 to 15 years at 50%. *** I wasn't told by [Maurer] that I could face up to 30 years on count [III]. I wasn't told [that] I could be sentence[d] to consecutive sentences because of my prior criminal record. [Maurer] never told me that count I was a truth-in-sentencing crime that carries 85%. If I had known this information[,] I would have accepted the State's offer of 18 years rather than going to trial and receiving 45 years ***. The advice I received caused me to reject the [State's guilty-]plea offer of 18 years."

¶ 7        In October 2013, the State filed a memorandum in support of its motion to dismiss defendant's postconviction petition, arguing that defendant could not show how he was prejudiced by his counsel's performance. Specifically, the State contended that defendant (1) cannot realistically claim that if he knew he faced a sentencing range of at least 30 to possibly 45 years in prison, that he would have accepted a negotiated guilty-plea offer, which required him to serve 85% of an 18-year sentence; (2) was "adamant" that counsel essentially negotiate a 7 1/2-year sentence with the State (a 15-year guilty-plea agreement in which he would serve only 50% of the sentence); and (3) cannot demonstrate, given his criminal history and the facts of this case, that the trial court would have accepted the negotiated guilty plea.

¶ 8        In May 2014, the trial court granted the State's motion and dismissed defendant's amended postconviction petition, finding that defendant failed to demonstrate how his counsel's

- 3 -

representation (1) fell below the objective standard of reasonableness and (2) prejudiced him.

¶ 9       This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11      Defendant argues that the trial court erred by dismissing his amended postconviction petition because he alleged a substantial showing of a constitutional violation. We agree.

¶ 12           A. Proceedings Under the Act and the Standard of Review

¶ 13      In *People v. Tate*, 2012 IL 112214, ¶¶ 9-10, 980 N.E.2d 1100, the supreme court outlined the following three-stage process contemplated under the Act:

> "In a noncapital case, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the petition, taking the allegations as true, and determine whether the petition is frivolous or is patently without merit. [Citation.] A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. [Citation.] ***
>
> If the circuit court does not dismiss the petition as frivolous or *** patently without merit [citation], the petition advances to the second stage, where counsel may be appointed to an indigent defendant [citation], and where the State, as respondent, enters the litigation [citation]. *** At this second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation.

[Citations.]  If no such showing is made, the petition is dismissed. [Citation.]  If, however, a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing.  [Citations.]  The summary dismissal of a postconviction petition is reviewed *de novo.*"  (Internal quotations marks omitted.)

¶ 14                    B. Ineffective-Assistance-of-Counsel Claims

¶ 15         Ineffective assistance of counsel claims are judged under the now familiar test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "The [*Strickland*] test is composed of two prongs: deficiency and prejudice."  *People v. Griffin*, 178 Ill. 2d 65, 73, 687 N.E.2d 820, 827 (1997).  A defendant must demonstrate that his defense counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment."  *Strickland*, 466 U.S. at 687.  In so doing, a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence.  *Id*. at 689.  A defendant must also demonstrate prejudice—that is, a reasonable probability that, but for defense counsel's deficient performance, the result of the proceeding would have been different.  *Id*. at 694.  Both prongs of the *Strickland* test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel.

¶ 16              C. The Constitutional Right to the Effective Assistance of
                        Counsel During Guilty-Plea Negotiations

¶ 17         Prior to addressing the merits of defendant's challenge to the trial court's second-stage dismissal of his amended postconviction petition, we first provide a historical perspective to place defendant's constitutional claim in its proper context.

¶ 18                    1. *The Illinois Supreme Court's Decision in* Curry

¶ 19           In *People v. Curry*, 178 Ill. 2d 509, 528, 687 N.E.2d 877, 887 (1997), the Illinois Supreme Court recognized a defendant's sixth amendment right to the effective assistance of counsel during guilty-plea negotiations. Specifically, the supreme court held that "[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a [guilty-]plea offer." (Emphasis in original.) *Id*. In so holding, the supreme court noted that the constitutional right to the effective assistance of counsel during guilty-plea negotiations "extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Id*. at 518, 687 N.E.2d at 882.

¶ 20           In *Curry*, the State charged the defendant with residential burglary (720 ILCS 5/19-3 (West 1992)) and two counts of criminal sexual assault (720 ILCS 5/12-13(a)(2) (West 1992)). *Curry*, 178 Ill. 2d at 512, 687 N.E.2d at 879. On the eve of the defendant's jury trial, the State offered to dismiss two of the three counts and recommend that the trial court impose a 4 1/2-year sentence if the defendant pleaded guilty to one count of criminal sexual assault. *Id*. at 523, 687 N.E.2d at 884. Based on counsel's advice regarding the possible sentences he was facing on the charged offenses, the defendant rejected the State's guilty-plea offer and proceeded to trial, where the jury convicted him of all three charges. *Id*. at 512, 687 N.E.2d at 879. The court later sentenced the defendant to a statutorily mandated minimum term of 12 years in prison (three consecutive terms of four years' imprisonment on each conviction). *Id*.

¶ 21           Shortly thereafter, the defendant filed a motion to reconsider the sentence. *Id*. at 515, 687 N.E.2d at 881. Appended to that motion was a stipulation, which read, as follows: " '[H]ad [defendant] been called to testify, he would [have] testif[ied] that had he known that consecutive sentences were mandatory, he would have accepted the State's [guilty-]plea [offer]

of 4 1/2 years of imprisonment on one count of criminal sexual assault.' " *Id.* at 523, 687 N.E.2d at 884. Also appended to the defendant's motion to reconsider the sentence was an affidavit from the defendant's counsel, in which counsel averred, as follows:

> " 'During [guilty-plea] discussions, both myself and [the State] assumed that [the defendant] was not eligible for consecutive sentences.
>
> On the eve of trial, [the State] offered to dismiss all remaining charges if [the defendant] pled to one count of criminal sexual assault and a sentence of 4 1/2 years.
>
> I nor anyone from my firm informed [the defendant] that if he were convicted of more than one offense, consecutive sentences were mandatory.
>
> After speaking with [the State] ***, I informed [the defendant] that in my opinion, given his lack of prior criminal record, if convicted of any of these charges ***, it was my belief that there was a substantial possibility that he would receive close to the minimum sentence of four (4) years. Based upon this advice, [the defendant] rejected the State's plea offer.' " *Id.* at 523, 687 N.E.2d at 884-85.

¶ 22 Following a July 1995 hearing, the trial court denied the defendant's motion to reconsider the sentence. *Id.* at 516, 687 N.E.2d at 881. The appellate court later affirmed the trial court's judgment, rejecting the defendant's claim that he received ineffective assistance of counsel during guilty-plea negotiations. *Id.* at 516-17, 687 N.E.2d at 881. The supreme court

- 7 -

subsequently allowed the defendant's petition for leave to appeal. *People v. Curry*, 169 Ill. 2d 574, 675 N.E.2d 635 (1996).

¶ 23    The issue before the supreme court in this direct appeal was whether the defendant was denied his constitutional right to the effective assistance of counsel during plea negotiations with the State when counsel failed to advise the defendant that he would receive mandatory consecutive sentences if convicted of multiple charges. *Curry*, 178 Ill. 2d at 512, 687 N.E.2d at 880.  In reversing the judgments of the trial and appellate courts, the supreme court addressed the first prong of the *Strickland* analysis regarding counsel's deficient performance, as follows:

> "Defense counsel's recommendation to reject the State's plea offer was not the product of a defensive strategy or judgment which was proven to be unwise only in hindsight. [Citation.]  Rather, counsel's advice was predicated on an understanding of sentencing law which was plainly erroneous when viewed at the time of plea negotiations.  Based on the facts before us, we conclude that defense counsel's performance during plea negotiations was objectively unreasonable and fell outside 'the wide range of reasonable professional assistance.' [Citation.] "  *Id*. at 529, 687 N.E.2d at 887.

¶ 24    As to the prejudice prong of the *Strickland* analysis, the supreme court concluded that "the disparity between the 12-year, mandatory minimum sentence which [the] defendant faced and the 4 1/2-year [guilty-]plea offer; and most importantly, defense counsel's uncontradicted affidavit that [the] defendant rejected the plea offer because of counsel's erroneous advice, we conclude that [the] defendant has established a reasonable probability that he

would have accepted the plea offer, absent his attorney's deficient performance." *Id*. at 533, 687 N.E.2d at 889. In so concluding, the supreme court determined that the appropriate remedy was to remand the defendant's cause for a new trial, which "may include the resumption of the plea bargaining process." *Id*. at 536-37, 687 N.E.2d at 890.

¶ 25                    2. *The Illinois Supreme Court's Decision in* Hale

¶ 26        Sixteen years after *Curry*, the Illinois Supreme Court decided *People v. Hale*, 2013 IL 113140, ¶ 1, 996 N.E.2d 607, which considered whether the defendant was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State when counsel did not mention that the defendant would receive mandatory consecutive sentences if convicted of multiple charged counts of attempt (first degree murder). In reversing the appellate court's judgment and affirming the trial court's denial of the defendant's postconviction petition following a third-stage evidentiary hearing, the supreme court concluded that the defendant had failed to establish how he was prejudiced by counsel's performance. *Id*. ¶¶ 1, 11, 13, 996 N.E.2d 607.

¶ 27        In so concluding, the *Hale* court discussed the then-recently decided companion cases of *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376 (2012), in which the United States Supreme Court addressed ineffective-assistance-of-counsel issues similar to those in *Curry* and *Hale*. *Hale*, 2013 IL 113140, ¶ 19, 996 N.E.2d 607. Specifically, the Illinois Supreme Court's discussion in *Hale* focused on the following requirements that a defendant must demonstrate to satisfy the prejudice prong of the *Strickland* analysis:

> " 'To show prejudice from ineffective assistance of counsel
>
> where a plea offer has lapsed or been rejected because of counsel's

deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. *Defendants must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.* To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.' " (Emphasis in original.) *Id.* (quoting *Frye*, 566 U.S. at ___, 132 S. Ct. at 1409).

See also *Cooper*, 566 U.S. at ___, 132 S. Ct. at 1384-85.

¶ 28            Given the Supreme Court's holding in *Frye* and *Cooper*, the *Hale* court acknowledged the following:

"While it is clear that the first and last factors which *Frye* and *Cooper* set forth as necessary to establish the prejudice prong of *Strickland* are similar to those set forth in *Curry*, the requirements highlighted above are new. \*\*\* Thus, *Frye* and *Cooper*, rather than *Curry*, control and the factors set forth in those cases must now be relied upon in deciding if prejudice has been shown where a plea offer has lapsed or been rejected because of counsel's deficient performance." *Id.* ¶ 20, 996 N.E.2d 607.

- 10 -

¶ 29        Thus, to prevail on a claim that a trial attorney's given deficient performance denied a defendant his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State, a defendant must also demonstrate that (1) a reasonable probability existed that the defendant would have accepted the guilty-plea offer absent counsel's deficient performance and (2) the guilty-plea offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties' agreement.  *Id.*; *People v. Jellis*, 2016 IL App (3d) 130779, ¶ 29.

¶ 30        3. *Implications of a Defendant's Constitutional Right to the Effective*
             *Assistance of Counsel During Guilty-Plea Proceedings*

¶ 31        As the aforementioned cases reveal, both the United States Supreme Court and the Illinois Supreme Court have long recognized that plea negotiations are an important part of the criminal justice system. See *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned."); see also *People v. Boyt*, 109 Ill. 2d 403, 416, 488 N.E.2d 264, 271 (1985) ("Plea bargaining plays an important role in our criminal justice system.  \*\*\* [W]hen [it is] properly administered, [it] is to be encouraged.").

¶ 32        Prior to the supreme court's decision in *Curry*, many judges—including this author when serving as a trial judge—prohibited discussions with the trial court regarding the details of guilty-plea negotiations between the State and a defendant.  One rationale for this prohibition was to ensure that any sentence ultimately imposed by the court would be based upon the court's individualized assessment of the various factors to be considered when imposing sentence and would have nothing to do with whatever plea negotiations the parties may have engaged in.  Another rationale was to avoid any appearance of impropriety if the defendant later opted instead

- 11 -

to proceed to trial, especially if details stated during the guilty-plea negotiations were not revealed through admissible evidence during defendant's trial. However, the aforementioned constitutional protections placed on the plea-bargaining process by *Curry*, *Frye*, *Lafler*, and their progeny make the practice of not informing the court of the details of the guilty-plea negotiations no longer sound.

¶ 33　　　We note that a criminal defendant personally possesses a constitutional right to elect what plea to enter. See *People v. Phillips*, 217 Ill. 2d 270, 281, 840 N.E.2d 1194, 1201 (2005) ("The *** five decisions that ultimately belong to the defendant in a criminal case after consultation with his attorney: (1) what plea to enter; (2) whether to waive a jury trial; (3) whether to testify in his own behalf; (4) whether to tender a lesser-included-offense instruction; and (5) whether to appeal."). As we previously mentioned, underlying a defendant's constitutional right to either plead guilty or not guilty is the constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State. The consequences of a defendant's not being so informed could be the reversal of an otherwise error-free trial when the record is silent (as is typically the case) as to what a defendant was told about rejecting or accepting a guilty-plea offer from the State.

¶ 34　　　In *People v. Frieberg*, 305 Ill. App. 3d 840, 852, 713 N.E.2d 210, 219 (1999), this court cautioned about the potential reversible error associated with a defendant's constitutional right to testify "lurk[ing]—like an unexploded bomb—in every case resulting in a conviction," as follows:

> "As the supreme court noted in *People v. Brown*, 54 Ill. 2d 21, 24,
> 294 N.E.2d 285, 287 (1973), 'in every case in which the issue is
> raised, the lawyer's advice will in retrospect appear to the defend-

ant to have been bad advice.'  Thus, convicted defendants who testified on their own behalf at trial often will later claim that doing so was not their personal choice and their trial counsel forced them to testify.  On the other hand, defendants who did not testify at trial often will later claim that they really wanted to testify but their trial counsel prevented them from doing so.

To defuse this explosive situation, we urge trial courts *in every criminal case* to take the few seconds needed, after the State has rested its case in chief and before the presentation of the defense case, to admonish the defendant personally that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after consulting with counsel. ***

Taking a few seconds to so admonish the defendant would insulate the record from postconviction attacks ***."  (Emphasis in original.)

¶ 35                    4. *The Trial Court's "Preflight Checklist"*

¶ 36        Consistent with the reasoning underlying *Frieberg*, we recommend that before proceeding to trial in a criminal case, a trial court should question the parties to ensure compliance with the defendant's constitutional rights.  In other words, the court should go through a "preflight checklist" to address—and thereby avoid—problems that might later arise, as in the present case, from a defendant's (or defense counsel's) alleged confusion or uncertainty about the consequences of the defendant's standing trial and rejecting a negotiated guilty plea the State of-

fered.  The court's inquiry should be conducted at a pretrial hearing so that if problems arise, corrective action can be taken prior to the scheduled trial.  Creating such a record should not only prevent the reversal of a judgment reached after an otherwise error-free trial, but would also allow for the efficient adjudication of any collateral challenges at the first stage of the postconviction proceeding and, by extension, save time and limit the expenditure of scarce judicial resources.  See *People v. Hernandez*, 2014 IL App (2d) 131082, ¶ 16, 20 N.E.3d 484 (affirming the trial court's first-stage dismissal of the defendant's postconviction petition because the record affirmatively rebutted the defendant's claim that his counsel failed to communicate the State's guilty-plea offer).  Akin to a pilot performing a preflight check of aeronautical systems to ensure safety, we recommend that, at a minimum, the court's pretrial inquiry should address the following topics:

- Ensure that the prosecutor, defense attorney, *and the defendant* all understand the applicable minimum and maximum sentences the defendant is facing on the State's charges if he is convicted at trial, which should include a discussion of any sentencing enhancements (such as extended terms), any mandatory or discretionary consecutive sentencing options, and any truth-in-sentencing considerations.

- Inquire of the State whether it entered into negotiations with defense counsel, and if the State made a guilty-plea offer to defense counsel, the exact nature of the offer (including expiration dates, if any).

- Confirm with defense counsel the terms of the State's stated

- 14 -

guilty-plea offer *and* whether counsel conveyed that offer to the defendant.

- Confirm personally with the defendant his understanding of the State's guilty-plea offer as conveyed by his counsel.

- Ensure the defendant's understanding that the ultimate decision whether to accept or reject the State's offer rests with the defendant after consultation with his counsel.

- Confirm the defendant's decision to reject the State's guilty-plea offer.

- Confirm that given his understanding of the minimum and maximum sentences that the trial court can impose if convicted of the State's current charges, the defendant persists with his decision regarding the State's guilty-plea offer.

- Admonish the defendant that although he should consult with his counsel and consider counsel's advice, the decision whether to (1) plead guilty or not guilty and (2) have a jury trial or a bench trial is ultimately the defendant's decision to make.

¶ 37    The pages of Illinois jurisprudence are filled with cases—like this one—where trial courts could have avoided reversal by taking an extra moment at some point prior to trial to make a record regarding any pretrial negotiations. *Hernandez* provides an excellent example of the trial court making a record prior to trial, which enabled it to successfully summarily dismiss several of these types of postconviction claims.

¶ 38    In *Hernandez*, the defendant was found guilty of first degree murder and sentenced to an extended term of 84 years in prison. After his conviction was affirmed on appeal, he filed a postconviction petition alleging, among other claims, that his counsel failed to communicate the State's offer to plead guilty in exchange for a sentencing cap of 60 years. After noting that "defense counsel has a duty to communicate to the defendant formal offers from the prosecution, and a failure to do so may present an arguable claim of deficient performance" under *Strickland* (*Hernandez*, 2014 IL App (2d) 131082, ¶ 15, 20 N.E.3d 484), the *Hernandez* court reiterated that "if the record rebuts the allegation that a defendant did not know of the offer, summary dismissal of the petition may remain proper." *Id*.

¶ 39    After reviewing the trial court's various admonishments to and discussions with the defendant, the *Hernandez* court emphatically concluded that "[h]ere, the record positively rebuts defendant's assertions." *Id.* ¶ 16, 20 N.E.3d 484. Indeed, the trial court's colloquy with the defendant addressed most of the "preflight checklist" inquiries set forth above.

¶ 40                    D. Defendant's Claim of Ineffective Assistance
                            of Counsel in this Case

¶ 41    Defendant argues that the trial court erred by dismissing his amended postconviction petition because he alleged a substantial showing of a constitutional violation. We agree.

¶ 42    "Dismissal is warranted at the second stage [of postconviction proceedings] where the defendant's claims, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Turner*, 2012 IL App (2d) 100819, ¶ 21, 972 N.E.2d 1205. "[A]ll well-pleaded facts that are not positively rebutted by the trial record are to be taken as true," and "the court is prohibited from engaging in any fact finding." (Internal quotation marks omitted.) *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15, 964 N.E.2d 1139.

"[W]hen a petitioner's claims are based upon matters outside [of] the record, the [Act] does not intend such claims to be adjudicated on the pleadings." *Id.* We review *de novo* the trial court's dismissal of a postconviction petition at the second stage. *Turner*, 2012 IL App (2d) 100819, ¶ 21, 972 N.E.2d 1205.

¶ 43 In this case, defendant alleged in his June 2008 affidavit, which he appended to his amended postconviction petition, that he was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State. Specifically, defendant contended that his counsel's performance was deficient in that counsel failed to accurately inform him of the possible penalties he faced on the State's aforementioned charges. In addition, defendant contended further that he was prejudiced by counsel's ineffectiveness in that if he had known he was facing the possibility of consecutive sentences that required him to serve at least 85% of any sentence imposed, he would have accepted the State's 18-year guilty-plea offer instead of opting to proceed to a jury trial.

¶ 44 As previously noted, postconviction challenges based on a claim that the defendant was denied his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State are almost always based on matters that occur *de hors* the record. Thus, absent a pretrial hearing in which the trial court could make a record regarding guilty-plea negotiations by asking questions of the parties on the record in accordance with the aforementioned preflight checklist, the court must take all well-pleaded facts as true. When those well-pleaded facts allege a substantial constitutional violation—as in this case—the court must advance the postconviction petition to the third stage of postconviction proceedings for an evidentiary hearing. Because we conclude that the court erred by not so doing, we reverse and remand with directions that the court (1) permit the State to answer defendant's postconviction petition

pursuant to section 122-5 of the Act (725 ILCS 5/122-5 (West 2014)) and (2) conduct a third-stage evidentiary hearing pursuant to section 122-6 of the Act (725 ILCS 5/122-6 (West 2014)).

¶ 45                                III.  CONCLUSION

¶ 46        For the foregoing reasons, we reverse the trial court's judgment and remand with directions.

¶ 47        Reversed; cause remanded with directions.