2021 IL App (2d) 180307-U
No. 2-18-0307
Order filed January 7, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-1735 |
| TERRENCE L. STEELE, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Summary dismissal of defendant's postconviction petition affirmed.

¶ 2    This matter comes before us for a second time. Defendant, Terrence L. Steele, was convicted of racketeering, racketeering conspiracy, and eight counts of delivery of a controlled substance. He was sentenced to 20 years' imprisonment for racketeering conspiracy. We affirmed his conviction and sentence on direct appeal, having determined that the trial court did not abuse its discretion in denying defendant's motion to discharge for a speedy-trial violation. *People v. Steele*, 2017 IL App (2d) 150034-U (unpublished order under Supreme Court Rule 23). On March

13, 2018, defendant filed a *pro se* postconviction petition for relief, which the circuit court summarily dismissed on March 26, 2018. Defendant now appeals that dismissal, asserting that his postconviction petition stated the gist of a constitutional claim that his trial counsel was ineffective for "failing to seek plea negotiations with the State and lying to him about that failure." Because defendant did not state the gist of a constitutional claim that his trial counsel rendered ineffective assistance, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4      Defendant was charged by a superseding information with one count of racketeering conspiracy involving the illegal distribution of heroin (720 ILCS 570/401(c)(1) (West 2012)); 720 ILCS 5/33G-4(a)(3) (West 2012)), one count of racketeering involving the illegal distribution of heroin (720 ILCS 570/401(c)(1) (West 2012)); 720 ILCS 5/33G-4(a)(1) (West 2012)), eight counts of the unlawful delivery of 1 gram or more but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2012)), and one count of the unlawful delivery of 15 grams or more but less than 100 grams of heroin (720 ILCS 570/401(a)(1)(A) (West 2012)). The charging instruments alleged that Andres Garcia was the head of a drug trafficking organization who, through his lieutenants and runners, distributed raw heroin to six individuals, whom the State identified as "customers." Those "customers," in turn, used packagers and runners of their own to sell the heroin to street-level drug dealers. Defendant was alleged to have been one of Garcia's "customers."

¶ 5      Following a jury trial, defendant was convicted of racketeering, racketeering conspiracy, and eight of the nine counts of delivery of a controlled substance, and he was sentenced to 20 years' in imprisonment for racketeering conspiracy. Citing one-act, one-crime principles, the trial court declined to sentence defendant on the other convictions. On direct appeal, defendant argued

that his statutory right to a speedy trial had been violated, but we affirmed his conviction and sentence. *Steele*, 2017 IL App (2d) 150034-U (unpublished order under Supreme Court Rule 23).

¶ 6        On March 13, 2018, defendant filed a *pro se* post-conviction petition arguing, among other points, that his trial counsel provided ineffective assistance.  He alleged that he instructed his attorney on several occasions to ask the State for a plea offer, and that his counsel later informed him that he had requested an offer, but the prosecutors denied the request.  Defendant alleged that his counsel informed him that the State wanted to go to trial such that defendant had "no other choice."

¶ 7        Defendant further alleged that he later learned that his counsel had not requested a plea offer from the prosecutors.  In support, he attached an affidavit from Ellyn Hardiman, his aunt. Hardiman averred that, in December 2017, she "spoke on the phone with the prosecutor, Mr. Diamond, who handled" defendant's case.  She asked Mr. Diamond whether her nephew's attorney ever spoke with him about a plea agreement, and she "was told by [him] that [defense counsel] never requested any such deal with him[,] and that this was his first hearing of this when [she] mentioned it to him."  Defendant alleged that his counsel lied to him about trying to seek a plea offer and failed to "abide by [his] decisions concerning anything [he] requested."  Defendant asserted that his attorney was "a loose cannon, and [he] felt like [counsel] didn't really understand how to defend [his] RICO case because [counsel] kept trying to defend a speedy trail [*sic*] case." He continued that "[t]he speedy trail [*sic*] case was denied and [counsel] was force[d] to continue my case, [and] all I wanted to do was take a plea deal[, but counsel] obviously had another agenda."

¶ 8        On March 26, 2018, the circuit court summarily dismissed the petition as frivolous and patently without merit.  Pertinently, it noted that defendant was aware on November 10, 2014, that the matter was about to proceed to a jury trial, yet defendant did not state that he was not ready or

indicate a desire to forego the trial or to change his plea. It also noted that Mr. Diamond was not the only prosecutor who handled the case. Further, the court cited *People v. Palmer*, 162 Ill. 2d 465, 478 (1994), where our supreme court observed that an attorney's decision whether to initiate plea negotiations may be a matter of trial strategy and, in that circumstance, would not constitute ineffective assistance of counsel. However, rather than dismiss on either of these grounds, the circuit court concluded that even if defense counsel were obligated to seek a plea agreement and failed to do so, defendant would be unable to show that he was prejudiced by that failure. Defendant timely appealed.

¶ 9                                          II. ANALYSIS

¶ 10    We begin with an overview of the applicable statutory framework. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)) provides a three-stage process by which a person under a criminal sentence can challenge his or her conviction as being the result of a substantial denial of his or her rights under the United States Constitution, the Constitution of the State of Illinois, or both. *People v. Mendez*,  402 Ill. App. 3d 95, 98 (2010). The Act is not intended to be a substitute for a direct appeal, but rather, it is a collateral proceeding, which attacks a final judgment. *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 44. The purpose of a postconviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 52.

¶ 11    Under the Act, the defendant files a postconviction petition in the circuit court where his or her original proceeding was held. *Mendez*, 402 Ill. App. 3d at 98. At this first stage of post-conviction proceedings, wherein the circuit court must determine whether the petition is frivolous or patently without merit, the defendant need only present a limited amount of detail, and all well-

pleaded allegations are to be liberally construed and taken as true (*People v. Anderson*, 375 Ill. App. 3d 121, 132 (2007)), so long as they are not affirmatively rebutted by the record (*People v. Gerow*, 388 Ill. App. 3d 524, 526 (2009)). The threshold that a postconviction petition must meet to survive the first stage of review is low because, as is the case here, most postconviction petitions are drafted by *pro se* petitioners. *People v. Knapp*, 2020 IL 124992, ¶ 43. At the first stage, the circuit court reviews the defendant's petition on its own, without input from the parties. *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 83.

¶ 12      If the circuit court determines that the petition is frivolous or patently without merit, it must dismiss it.      725 ILCS 5/122-2.1(a)(2) (West 2018); *Knapp*, 2020 IL 124992, ¶ 43.      A postconviction petition is "frivolous or patently without merit only if it has no 'arguable basis either in law or in fact.' " *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010) (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). A petition that lacks an arguable basis in either law or fact is one that is based on an indisputably meritless legal theory or fanciful factual allegations. *Luciano*, 2013 IL App (2d) 110793, ¶ 83. "[A] meritless legal theory is one completely contradicted by the record, while fanciful factual allegations may be fantastic or delusional." (Internal quotation marks omitted.) *Knapp*, 2020 IL 124992, ¶ 45. If the circuit court does not dismiss the petition as either frivolous or patently without merit, it advances to the second stage, where counsel may be appointed to an indigent defendant and where the State may file a motion to dismiss the petition or file an answer. *Hodges*, 234 Ill. 2d at 10; 725 ILCS 5/122-5 (West 2018).

¶ 13      Allegations of ineffective assistance of counsel are governed by the familiar standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984) and adopted in Illinois by *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy two prongs, namely, that: (1)

counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance resulted in prejudice to the defendant. *People v. Manning*, 241 Ill. 2d 319, 236 (2011). The bar is admittedly lower, however, in the context of first-stage postconviction proceedings. In that situation, as is the case here, the petition need only demonstrate that it is arguable that both *Strickland* prongs are satisfied. "A postconviction petition alleging ineffective assistance of counsel should not be summarily dismissed if (1) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (2) it is *arguable* that the petitioner was prejudiced." (Emphasis added.) *Knapp*, 2020 IL 124992, ¶ 46. See also *People v. Tate*, 2012 IL 112214, ¶¶ 19-20 (explaining that, due to "this 'arguable' *Strickland* test," first-stage postconviction petitions alleging ineffective assistance of counsel enjoy a more lenient pleading standard than postconviction petitions at the second-stage). See also *People v. Wilson*, 2013 IL App (1st) 112303, ¶ 20. We review *de novo* the trial court's summary dismissal of a postconviction petition. *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 27.

¶ 14 Defendant argues on appeal that the circuit court erred by summarily dismissing his postconviction petition at the first stage because it raised the gist of a constitutional claim that counsel was ineffective by (1) failing to abide by his instruction to request a plea offer from the State; and (2) subsequently lying to defendant about that failure. Regarding defense counsel's deficient performance, defendant concedes that he had no constitutional right to receive a plea offer, but he asserts that "the record in this case does not indicate that [counsel] had any strategic reason to refuse to initiate plea negotiations," and that "the only strategy [defendant] wanted [his counsel] to pursue was to negotiate a plea agreement." He maintains that seeking a plea agreement with the State would have been "the only [strategy] that made sense, given the extent of the State's evidence." Further, defendant argues that his counsel's deficient performance resulted in prejudice

because there was a reasonable probability that (1) the State would have extended a plea offer had his counsel asked for one; (2) defendant would have accepted that offer; (3) the offer would have been accepted by the court; and (4) the offer would have resulted in a better outcome than he received at trial.

¶ 15    We agree with the State that we need not address whether defense counsel's performance was deficient, because defendant has not shown that it is arguable that he suffered prejudice stemming from counsel's alleged failure to pursue plea negotiations with the State.  Defendant's argument is wholly dependent on this court agreeing to "adapt" the test noted in *People v. Hale*, 2013 IL 113140, that courts use to evaluate prejudice under *Strickland* where a plea offer has lapsed or was rejected because of counsel's deficient performance.  In *Hale*, our supreme court adopted the factors outlined by the United States Supreme Court in *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012) in evaluating such circumstances, and it quoted with approval the following:

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.  Defendants must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ***.  To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." (Emphasis omitted.)  *Hale*, 2013 IL 113140, ¶ 19 (quoting *Frye*, 566 U.S. at 147).

¶ 16    Defendant asks that we adapt the test in *Hale* to evaluate whether his postconviction petition stated the gist of a claim that he suffered actual prejudice stemming from counsel's alleged failure to request a plea offer from the State.  According to defendant, the "adapted [*Hale*] test" would require that a defendant show the gist of a claim that: (1) the State would have made an offer if asked, (2) the defendant would have accepted the offer, (3) the negotiated plea would have been entered by the court, and (4) the negotiated plea would have resulted in a better outcome for the defendant than he or she received after taking the case to trial.  Here, defendant cites no authority, nor could we find any, to support his position that the test in *Hale* may be used to evaluate whether counsel was deficient by foregoing plea negotiations altogether. Notwithstanding defendant's reassurance that "that adaption should be easily made," we decline to do so here.  As argued by the State, the difference between *Hale* and the instant case is that, here, defendant has no plea offer to assert that he would have accepted absent counsel's unprofessional errors, and he does not have any plea offer to compare with the sentence that he ultimately received.

¶ 17    Indeed, even if we were inclined to adapt *Hale* to evaluate defendant's ineffective assistance of counsel claim, we would conclude that defendant's postconviction petition fell short of it.  Put simply, defendant's various assertions in support of his position that he arguably suffered prejudice by his counsel's performance were far too speculative to survive summary dismissal.

¶ 18    The crux of defendant's argument is that the State would have extended a plea offer to him if defense counsel had simply asked for one.  In support, defendant notes that the prosecutors commented in November and December of 2013 that defense counsel had not requested an offer nor had the State extended one, and he asserts that those statements imply that no offer was extended *because* defense counsel did not ask for one.  This argument grasps at straws and

overlooks that courts are encouraged to, prior to trial, inquire whether the State "entered into negotiations with defense counsel, and if the State made a guilty-plea offer to defense counsel, the exact nature of the offer," among other topics. *People v. Williams*, 2016 IL App (4th) 140502, ¶ 36. Indeed, the court in *Williams* advised trial courts to "go through [this] 'preflight checklist' to address—and thereby avoid—problems that might later arise," and it noted that creating such a record would "allow for the efficient adjudication of any collateral challenges at the first stage of the postconviction proceeding." *Id*. Here, the State made the final of these comments in anticipation of trial which, at that point, was scheduled to commence just three weeks later.

¶ 19 Defendant incredibly asserts on appeal that, in the face of the overwhelming evidence against him, "[i]t was unequivocally in his best interest to accept *whatever* offer the State made." (Emphasis in original.) However, defendant did not identify—either in his postconviction petition or in his appellate brief—any "independent, objective confirmation" that he would have accepted an offer from the State. See *Hale*, 2013 IL 113140, ¶ 18 (noting that a defendant's subjective and self-serving testimony is insufficient to establish a reasonable probably he would have accepted the plea absent deficient advice of counsel). While we recognize that a complete factual recitation is not required during first-stage proceedings under the Act, a defendant nevertheless must set forth facts to support both *Strickland* prongs "which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Hodges*, 234 Ill. 2d at 10. Here, defendant failed to point to any independent factor to corroborate his assertion that he would have accepted any offer the State would have extended to him.

¶ 20 Concerning the last two *Hale* factors, we note that defendant concedes that "there is no information in this record concerning whether the trial judge would have accepted whatever plea agreement the defendant might have reached with the State." To the extent that defendant relies

on the plea offers that his co-defendants accepted, which ranged from three to 10 years, we observe that our supreme court rejected a similar argument as being "simply too speculative" in *People v. Palmer*, 162 Ill. 2d 465, 481 ("[T]he mere fact that [a co-defendant] was offered concessions serves as no indication that defendant likewise would have been extended a plea agreement."). It is also well-established that the State is under no duty to initiate or participate in plea-bargaining (*People v. Boyt*, 129 Ill. App. 3d 1, 17 (1994), and there is no constitutional right to receive a plea offer (*People v. Crenshaw*, 2012 IL App (4th) 110202, ¶ 13). Because defendant has not shown that it is arguable that he suffered prejudice, we need not evaluate whether his counsel's performance was deficient. See *Albanese*, 104 Ill. 2d at 527.

¶ 21   As an additional basis for affirming the trial court, we observe that the record affirmatively rebuts the principal allegations included in defendant's postconviction petition. The pertinent reports of proceedings confirm that defendant was present in court when the State spread of record that defense counsel had not requested an offer nor had it extended one, such that defendant was undoubtedly aware no later than November 7, 2013, that his counsel had not initiated plea negotiations with the State. Defendant's silence and inaction after learning that his attorney had not attempted what defendant describes as "the only strategy [he] wanted [his counsel] to pursue" confirms that, at a minimum, he acquiesced to the decision to forego plea negotiations in favor of pursuing other avenues of relief, including the speedy-trial claim that ultimately was unsuccessful. Defendant acknowledges that the prosecutor's statements in November and December of 2013 "should have put [him] on notice that [defense counsel] had not initiated plea negotiations at those points in time," but he asserts that the period between the comments and the eventual trial in November 2014 "contained more than sufficient time for [defendant] to request that [defense counsel] initiate plea negotiations and for [counsel] to lie" regarding the same. Here, without

stating it, defendant seems to suggest that he instructed his counsel to negotiate with the State sometime in 2014. However, this suggestion, too, is rebutted by the record, as defendant alleged without qualification in his postconviction petition that "all [he] wanted was to take a plea deal." Defendant doubles down on appeal, asserting that the "record supports [the] assertion that 'all [he] wanted to do was take a plea deal.' " We also note that, in denying his postconviction petition, the trial court pointed out that on November 10, 2014, it had a brief exchange with defendant regarding the impending jury trial, and "defendant never interjected anything about readiness, a desire to forego a jury trial, or a desire to change his plea." As such, we conclude that the record affirmatively rebuts defendant's assertions that "all [he] wanted to do was take a plea deal" and that "the only strategy [defendant] wanted [his counsel] to pursue was to negotiate a plea agreement."

¶ 22                                      III. CONCLUSION

¶ 23     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 24     Affirmed.