2023 IL App (2d) 220117-U
No. 2-22-0117
Order filed July 7, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11-CF-1358 |
| | ) | |
| AARON A. McGEE, | ) | Honorable |
| | ) | John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's denial of defendant's post-conviction petition after a third-stage evidentiary hearing was not manifestly erroneous.

¶ 2    Defendant, Aaron A. McGee, appeals the third-stage denial of his petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) seeking relief from his convictions, following a jury trial, of armed robbery with a dangerous weapon (720 ILCS 5/18-2(a)(1) (West 2010)) and armed robbery with a firearm (*id.* § 18-2(a)(2)). Defendant contends that the trial court erred in denying his petition when it found his version of events not credible.

Defendant additionally contends that the trial court erred in finding his defense counsel's testimony credible. For the reasons that follow, we affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     Following a jury trial, defendant was found guilty of armed robbery with a dangerous weapon (720 ILCS 5/18-2(a)(1) (West 2010)) and armed robbery with a firearm (*id.* § 18-2(a)(2)). See *People v. McGee*, 2014 IL App (2d) 121303-U.

¶ 5     During posttrial proceedings, the court noted that defendant had sent the court a written statement that presented a potential *Krankel* issue. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The actual written statement does not appear in the record, but the court quoted defendant: " 'My PD was supposed to get these X's dropped at first but she didn't do anything for me this whole time I been in jail, but give me my discovery, and that's it.' " The court asked defendant to elaborate, and defendant stated: "I just feel that [the] counts I got found guilty on, they didn't really have enough evidence on and I feel like they should have gotten dropped." The court then asked defendant if he believed that his counsel tried to get the charges dropped by going before a jury and presenting all the evidence. The court asked, "Do you think that she tried in that regard?" Defendant responded, "Yeah, at the end she did." He added, "At the end. I'm talking about way before." The court asked if there was anything else defendant felt that his counsel did not do for him, and he said, "Not really."

¶ 6     The trial court then asked defense counsel to address defendant's complaint that she should have persuaded the State to drop the Class X felonies. Counsel replied that there had been "protracted" plea negotiations with the State. She believed that at one point there was an offer for defendant to plead guilty to simple robbery but that "[it] did not take place." She said that the offer was presented to defendant, and he rejected it. The court commented: "He [defendant] believed

that the People did not have sufficient proof to convict him of armed robbery." Counsel replied: "I believe that that is [*sic*] his position at the time." The court found that there was no evidence of neglect by counsel and that it was defendant's choice to reject the plea offer.

¶ 7   At sentencing, the armed robbery with a dangerous weapon conviction merged with the armed robbery with a firearm conviction, and the court imposed a term of 29 years' incarceration.

¶ 8   Defendant filed a direct appeal arguing, *inter alia*, that the trial court erred in admitting a jail call recording because most of it was inaudible. We affirmed because counsel had stipulated to the recording's admissibility. *People v. McGee*, 2014 IL App (2d) 121303-U, ¶ 23. Defendant raised an issue of ineffective assistance of counsel related to jury instructions but did not allege ineffective assistance based on plea negotiations or the jail call recording.

¶ 9   In June 2016, defendant filed a *pro se* postconviction petition raising multiple claims of ineffective assistance of counsel. Relevant here, defendant claimed that trial counsel was ineffective for advising him not to accept offers to plead guilty to robbery with a sentence of eight- or nine-years' incarceration. According to defendant, counsel "promised [him] that he would not be found guilty of the charges and that the State's case was not that strong." (Defendant also claimed that trial counsel misadvised him about the penalties he was facing if convicted, but defendant does not renew that claim on appeal.)

¶ 10   Defendant attached an affidavit, in which he averred as follows. The State offered him a plea deal for nine years, but defense counsel said that she would not accept it because she would win the case at trial by proving that defendant did not have a gun. When defendant asked counsel how she would do that, she told him to let her " 'do the legal side of things.' " They always argued when she came to see him. The State next offered defendant an eight-year deal, but his counsel told him that it would be served at 85%. Defendant knew that was incorrect, but when he asked

counsel about it, she yelled and told him that she knew the law better than he does. Defendant averred: "I told her that I wanted to take the 8 or 9 year plea offer. My attorney then told me that she promesses [*sic*] me that she will beat this case at trial."

¶ 11 Defendant further averred as follows. Every time he said that he wanted to take the deal offered, counsel told him that he was crazy and repeated that she would win the case. He felt that counsel, as a form of retaliation, sought a mental health evaluation for him. Defendant had wanted a new attorney and told the court about the problems he was having with counsel, but the court said it could not help him. Defendant asserted: "I then felt that since I was stuck with this attorney and she promessed [*sic*] me she will win at trial, I just wanted to get the trial over with and said okay. But I never really wanted to go to trial because I was scared I would lose and the offer was not that bad."

¶ 12 Defendant attached to his petition several transcripts of the proceedings in his case to support his ineffectiveness claims. These transcripts reflect as follows. When trial counsel sought a fitness evaluation, defendant told the court that he and counsel were "not seeing eye to eye." Defendant noted that he had previously asked for new counsel. He also remarked that "[t]here's an argument every time [counsel] comes to see me" and that "[s]he's telling me false information, and then when I ask her about it, then there is an argument, so that's why she's trying to set it for some psych or something." On another occasion, defendant repeated his concerns about a fitness evaluation and said that he wanted to set his case for trial. On yet another occasion, defendant again told the court that there was a conflict between himself and counsel. The court told defendant, "Well, just because you don't like what she's saying or you don't get along with her doesn't mean it is a conflict." The court told defendant that, if he had an issue with his counsel, he should put it in writing and file a motion.

¶ 13     The trial court moved the petition to second-stage proceedings and appointed counsel. Counsel amended the petition, retaining the issues concerning plea bargaining. The State moved to dismiss the amended petition. As to the claim that trial counsel unduly influenced defendant to reject the State's plea offers, the State argued that (1) the claim lacked adequate support because counsel did not provide defendant's written statement that prompted the *Krankel* inquiry; and (2) defendant's failure at the *Krankel* inquiry to voice his concerns about trial counsel's undue influence in the plea-bargaining process affirmatively rebutted his claim.

¶ 14     The trial court granted the motion to dismiss. The court rejected defendant's claim that trial counsel exerted improper influence in the plea-bargaining process. The court's reason was that defendant failed to inform the court of that particular concern during the *Krankel* inquiry.

¶ 15     On June 21, 2021, this court reversed the trial court's decision as to defendant's plea claim. The cause was remanded to the trial court for a third-stage evidentiary hearing. See *People v. McGee*, 2021 IL App (2d) 190040.

¶ 16     On March 25, 2022, the trial court held an evidentiary hearing on defendant's postconviction petition wherein defendant testified as follows. Defendant claimed that his public defender, Judy Kullenberg, communicated two plea offers while he was in custody awaiting trial. The first offer required defendant to plead guilty to robbery in exchange for a nine-year prison sentence. He told Kullenberg that he wanted to accept that offer but Kullenberg advised him to "wait and see on the next offer." Kullenberg added that she would "try to get the Xs dropped and that we could beat it." Defendant took this to mean that Kullenberg could "win the case."

¶ 17     Sometime later, Kullenberg returned to defendant with a second offer of an eight-year prison sentence, served at 85 percent. Defendant was confused by the offer because he "figured my time was at 50 percent." He communicated to Kullenberg that he wished to accept the offer at

50 percent, but Kullenberg responded that defendant "was crazy." Defendant claimed that Kullenberg told him that he would be found not guilty of armed robbery with a firearm and armed robbery with pepper spray. Feeling coerced by Kullenberg, defendant rejected the offers and went to trial.

¶ 18    On cross-examination, defendant testified that he could not recall admitting in a recorded statement to police that he and Frank Rosas planned and committed the robbery. He did, however, recall stating that Rosas used pepper spray during the robbery. He further admitted that he was aware that Rosas was going to testify against him at trial.

¶ 19    Kullenberg testified that it was her practice as a public defender to review all plea offers with her clients whether she agreed with the offers or not. She stated that she always discussed with clients the likelihood of the State proving the charges at trial, as well as whether there was the potential to negotiate a better plea offer. She always allowed the client to make the ultimate decision as to accepting or rejecting plea offers.

¶ 20    Regarding her representation of defendant, Kullenberg testified that she was aware that the State planned to introduce evidence of phone records, incriminating statements by Frank Rosas, defendant's recorded confession, and an incriminating jail phone call made by defendant. She never told defendant that the State's case was weak or that she thought he would be found not guilty at trial. She believed that the State's case against defendant was "fairly strong." She recalled defendant telling her that he did not want to plead to an offense greater than attempted armed robbery or receive a sentence of more than two years. Defendant rejected the State's nine-year offer based on that position. Kullenberg was able to negotiate the State's offer down to eight years and recommended to defendant that he accept it, but he made the decision to reject the offer when visited in jail by her and her partner, Greg Brown.

¶ 21 Kullenberg admitted that defendant was not satisfied with her representation during pretrial and had requested that the trial court appoint new counsel on multiple occasions. She agreed that defendant would have been sentenced to a term of 6 to 30 years' imprisonment, served at 50%, if found guilty of the armed robbery with pepper spray count only. She further agreed that the State's plea offer was for robbery, not armed robbery. When asked whether she had made mistakes in the case, Kullenberg answered that she had.

¶ 22 On April 1, 2022, the trial court issued its order denying defendant's postconviction petition. The findings on the evidence presented at the evidentiary hearing read as follows:

"This Court has considered the testimony of the witnesses at the third stage hearing, a transcript of the testimony at the third stage hearing, the Defendant's affidavit, and the case law.

The following facts are not in dispute:

1. Assistant Public Defender Kullenberg was a highly experienced criminal defense attorney at the time of the Defendant's trial;

2. The Defendant was charged with two counts of armed robbery which, upon conviction, a mandatory minimum sentence of twenty-one years in the Illinois Department of Correction (IDOC) would be required;

3. The State made a plea offer to the Defendant for eight years in the IDOC to be served at eighty-five percent;

4. Said offer was not accepted, the Defendant went to trial, was convicted and sentenced to twenty-nine years in the IDOC;

5. The Defendant did not inform the Court he felt forced to go to trial at the Krankel hearing conducted after the verdict was returned even though the Court offered the Defendant an opportunity to say whatever he desired.

\*\*\*

The Defendant does not explain in his testimony at the hearing nor in his affidavit, how he was forced [to go to trial]. There were no threats or ultimatums.

In his affidavit, the Defendant stated he informed the Court of issues between himself and his counsel. The Defendant never informed the Court of being forced to go to trial.

Trial Counsel testified the Defendant refused to take the offer of eight years.

The idea that an experienced criminal defense attorney would force a client to trial in a case with eye witness testimony, co-defendant testimony and inculpatory statements, with a twenty-one-year mandatory minimum and an eight-year offer, does not make sense and is not credible.

I find the Defendant's rendition of the facts not credible.

I find the testimony of the Defendant's trial counsel is credible and believable.

¶ 23 On April 27, 2022, defendant timely filed an amended notice of appeal.

¶ 24                                          II. ANALYSIS

¶ 25 On appeal, defendant contends that the trial court erred in denying his postconviction petition following a third-stage evidentiary hearing. He argues that the trial court's finding that his testimony was not credible while finding Kullenberg's testimony credible was manifestly erroneous.

¶ 26    The Post-Conviction Hearing Act establishes a three-stage process by which persons under a criminal sentence can assert their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1 *et. seq.* (West 2020). At the third stage, a defendant has the burden of proving a substantial showing of a constitutional violation. *People v. Pendleton,* 223 Ill. 2d 458, 472–73 (2006). "An attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage." *People v. Marshall,* 375 Ill. App. 3d 670, 683 (2007). At the third stage, the trial court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought before the court." *People v. Gerow,* 388 Ill. App. 3d 524, 527 (2009). An evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester,* 261 Ill. App. 3d 1075, 1078 (1994).

¶ 27    "Following an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous." *People v. Beaman,* 229 Ill. 2d 56, 72 (2008). This standard recognizes that "we must give great deference to the trial court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses." *In re Floyd,* 274 Ill. App. 3d 855, 867 (1995). "A ruling is manifestly erroneous if it contains error that is clearly evident, plain, and indisputable." *People v. Hughes,* 329 Ill. App. 3d 322, 325 (2002).

¶ 28    To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors,

the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). The sixth amendment right to the effective assistance of counsel applies to the plea-bargaining process. *People v. Hale*, 2013 IL 113140, ¶ 15. Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. *Id.*

¶ 29    "[A] criminal defendant personally possesses a constitutional right to elect what plea to enter." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33. " 'A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' (Emphasis in original.)" *People v. Hale*, 2013 IL 113140, ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 528 (1997)). "This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Hale*, 2013 IL 113140, ¶ 16. To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* ¶ 18. "In other words, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Id.*

¶ 30    The supreme court in *Hale* looked to *Missouri v. Frye*, 566 U.S. 134 (2012), for the specific requirements of showing prejudice. Those requirements are as follows:

"[T]o prevail on a claim that a trial attorney's given deficient performance denied a defendant his constitutional right to the effective assistance of counsel during guilty-plea negotiations with the State, a defendant must also demonstrate that (1) a reasonable probability existed that the defendant would have accepted the guilty-plea offer absent counsel's deficient performance and (2) the guilty-plea offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties'

agreement." *Williams*, 2016 IL App (4th) 140502, ¶ 29 (citing *Hale*, 2013 IL 113140,

¶¶ 19-20) (citing *Frye*, 566 U.S. at 147)).

A defendant's self-serving claims are not adequate; there must be independent, objective

confirmation that the plea offer was rejected based on counsel's erroneous advice and not on other

considerations. *Hale*, 2013 IL 113140, ¶ 18.

¶ 31      In the present case, defendant asks this court to reject the fact-finding and credibility

determinations of the trial court. However, the record supports the trial court's analysis in denying

defendant's postconviction petition. The record shows that defendant repeatedly stated in court

that he wanted to go to trial. On January 19, 2012, defendant stated to the trial court that "I want

to set my case for trial, what we talked about when she came to see me on Tuesday, that's what

we talked about." On February 16, 2012, defendant stated to the trial court that "I'm not crazy,

none of that. I know what's going on. I want to set my case for trial. They didn't come to see me,

so I don't see how that's my fault and I should have another continuance. I just want to set it for

trial." He further stated on February 16, 2012, that "I don't need to see no psych people. I have a

high school diploma, I'm smart, I know all about my case, I know what's going on. I want to set

it for trial." On April 12, 2012, following a 402 conference set at defendant's request, Kullenberg

informed the trial court that "at this time we'd by asking for a trial date by agreement." At no time

during the underlying proceedings did defendant inform the trial court that he felt he was being

forced to go to trial or coerced by Kullenberg to reject any of the State's plea offers.

¶ 32      Kullenberg testified that defendant rejected the plea offers and indicated that he would

only accept a plea imposing a maximum two-year sentence. She testified that it was entirely up to

defendant whether to accept or reject the State's offers of eight and nine-years' imprisonment. She

testified that she and Greg Brown went to the jail to discuss the offers with defendant "and to talk

about why we thought he should take it." Defendant argues that the State should have called Greg Brown to testify as to what was discussed and corroborate or contradict Kullenberg's testimony. However, it was defendant's burden to prove the allegations at a third-stage evidentiary hearing. *People v. Hotwanger*, 2015 IL App (1st) 130525, ¶ 30. Based on the record, his failure to call witnesses to corroborate his own testimony, or contradict Kullenberg's, reduces his claims to inadequate, self-serving statements without independent, objective confirmation that the plea offer was rejected based on counsel's erroneous advice and not on other considerations. See *Hale*, 2013 IL 113140, ¶ 18.

¶ 33    In sum, the evidence of defendant's guilt at trial was overwhelming. See *McGee*, 2014 IL App (2d) 121303-U. Defendant's claim that Kullenberg would have forced him to trial with such evidence when the State offered a sentence 13 years below the mandatory minimum strains this court's credulity. We can find no deficient performance from Kullenberg under the first prong of *Strickland*. The trial court's credibility determinations are supported by the record and were not manifestly erroneous.

¶ 34                          III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 36    Affirmed.