2023 IL App (1st) 192512-U

No. 1-19-2512

First Division
February 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 12172 |
| | ) | |
| KIEANTAE JENKINS, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Justice Lavin dissented.

**ORDER**

¶ 1   *Held*:   The circuit court's second-stage dismissal of defendant's postconviction petition is reversed where postconviction counsel failed to provide reasonable assistance pursuant to Supreme Court Rule 651(c) by failing to raise the issue of trial counsel not discussing the State's plea offer with the defendant. The matter is remanded to the circuit court for second-stage proceedings with new postconviction counsel for the defendant.

¶ 2   Defendant Kieantae Jenkins appeals from an order of the circuit court of Cook County granting the State's motion to dismiss his petition for relief filed under the Post-Conviction

Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). On appeal, defendant contends his appointed postconviction counsel failed to provide reasonable assistance because counsel did not amend the *pro se* petition by: (1) adding an allegation that trial counsel rendered ineffective assistance during plea bargaining; (2) adding an argument that defendant was not culpably negligent for the untimely filing of his petition; and (3) obtaining new affidavits from defendant and his mother to support these additional arguments. We agree with the defendant and reverse and remand the matter for new second stage proceedings with new postconviction defense counsel.

¶ 3                                    BACKGROUND

¶ 4     In May 2007, defendant, who was 16 years old, was charged with three counts of attempted first degree murder, one count of aggravated battery with a firearm, one count of attempted armed robbery, and four counts of aggravated unlawful use of a weapon (AUUW). The charges arose after defendant shot Erin Lacy in the shoulder and once in each leg during an attempted armed robbery as Lacy was walking home from a store.

¶ 5     The public defender ("PD 1") was initially appointed to represent defendant. On July 20, 2007, private counsel, Sam Adam, Jr., began representing defendant. On December 27, 2007, the parties agreed to a continuance for a plea conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). The case was repeatedly continued over the next several months with counsel stating he was waiting for an offer. On May 5, 2008, counsel requested a conference with the State. The prosecutor replied that she was not ready for a conference and requested a continuance. On the next court date, defense counsel did not appear. The transcripts for the next two court dates are not included in the record. The record contains no further mention of a plea offer or conference.

¶ 6    On June 13, 2008, Adam withdrew and the second public defender ("PD 2") was appointed to represent defendant. On August 7, 2008, PD 2 withdrew and private counsel Tony Thedford began representing defendant. Thedford represented defendant throughout the remainder of the trial proceedings and sentencing. Following an April 2009 jury trial, defendant was found not guilty of attempted first degree murder but guilty of aggravated battery with a firearm and attempted armed robbery. The State nol-prossed the AUUW charges. The trial court sentenced defendant to consecutive prison terms of 20 years for aggravated battery and 6 years for attempted armed robbery. After defendant moved to reduce his sentence, the trial court ordered that the sentences would run concurrently rather than consecutively.

¶ 7    On direct appeal, defendant argued that his 20-year sentence was excessive and that his sentence for attempted armed robbery was void because the trial court failed to conduct a hearing to determine whether defendant should be sentenced as an adult in criminal court on that charge. On March 24, 2011, this court rejected those arguments and affirmed defendant's convictions. *People v. Jenkins*, No. 1-09-1963 (2011) (unpublished order under Supreme Court Rule 23). Defendant did not file a petition for leave to appeal with the Illinois Supreme Court.

¶ 8    On May 17, 2013, defendant filed the instant *pro se* postconviction petition, in which he raises six issues. The first page is a notarized form entitled "PRO SE POST-CONVICTION PETITION" on which defendant filled in the blanks and swore to the truth of the facts therein. A preprinted statement provides, "[t]his petition was mailed to the clerk of the circuit court within the time frame enumerated under 725 ILCS 5/122-1." On blank lines below the statement defendant typed, "725 ILCS 5/122-1 does not clearly identify the deadline for filing of a post-conviction petition when a PLA was not filed."

¶ 9    The second page of defendant's petition is a notarized affidavit form on which defendant averred his first issue as follows:

"My mother, Nefreterie Jenkins, stated that at the begining [*sic*] of trial, counsel informed her that the state had offered a 15 year sentence in exchange for plea of guilt, but he misunderstood how this offer was made and whether it would be at 85%. He never advised me of this offer, directly affecting the consequences of the proceedings."

However, he did not include in his petition any specific allegation that his trial counsel provided ineffective assistance during plea bargaining.

¶ 10    His second issue is that 725 ILCS 5/122-1(c) did not set out the filing deadline for petitioners who did not file a petition for leave to appeal. However, defendant failed to include any argument that his late filing of his petition was not due to his culpable negligence, despite raising this ambiguity. Defendant now argues that postconviction counsel provided ineffective assistance by failing to amend his *pro se* petition to raise either the ineffective assistance of trial counsel in failing to convey the plea offer, or that defendant's untimely filing was not due to his culpable negligence.

¶ 11    The remainder of defendant's petition consists of typed pages in which he raised his third, fourth, fifth, and sixth issues. His third issue is his allegation that his trial counsel rendered ineffective assistance because counsel failed to call witnesses or present evidence at trial. Defendant asserted that an "exculpatory witness" would have changed the outcome of the trial. Defendant, however, did not name any individuals counsel should have called as witnesses, nor did he state what evidence counsel should have presented. Defendant further argued that counsel failed to preserve specific issues of error in his motion for a new trial, and instead, "only provided

generalities." Defendant did not specify what issues counsel should have raised in the posttrial motion. Defendant stated that counsel failed to defend against the charges and that his trial was "the functional equivalent of a guilty plea."

¶ 12    His fourth issue is that his appellate counsel rendered ineffective assistance because counsel raised "weaker issues" on appeal and failed to investigate and raise "stronger issues." Defendant claimed counsel should have raised an identity issue. He also claimed counsel should have argued the police lacked probable cause to arrest him and that the trial court erred when it denied his motion to suppress identification. Defendant acknowledged these issues were not preserved for appeal but claimed a "constitutional exception" to the waiver rule applied.

¶ 13    His fifth issue is his allegation that the trial court erred when it denied his motion for a new trial because his identity was admitted in error. Defendant claimed trial counsel did not properly draft the posttrial motion. He also claimed appellate counsel should have pursued the issue. Defendant argued that the State failed to prove beyond a reasonable doubt that he was the shooter because Lacy's testimony identifying him was unreliable, no gun was recovered, and a gunshot residue test indicated defendant had no trace of gun powder on his hands immediately after the shooting.

¶ 14    Defendant's sixth issue is his allegation that his sentence was excessive and imposed as punishment for exercising his constitutional right to a jury trial. Defendant analogized his case to *People v. Dennis*, 28 Ill.App.3d 74 (1st Dist. 1975). Defendant illustrated that in *Dennis*, the defendant filed a *pro se* postconviction petition alleging he was punished for exercising his constitutional right to a jury trial where he was offered a sentence of 2 to 6 years during plea negotiations, then sentenced to a term of 40 to 80 years following a jury trial. *Id.* at 75. The circuit

court dismissed Dennis' postconviction petition. *Id.* at 77. On appeal, this court reversed the dismissal and reduced Dennis' sentence to a term of 6 to 18 years. *Id.* at 79. While quoting the *Dennis* court in the instant petition, defendant stated, inserting in bolded text below what appears to be the plea offer he complains was never discussed with him:

> "the appellate court of the First District has held 'that a "reasonable inference" of a constitutional deprivation may be drawn where a great disparity exists between the sentenced [*sic*] offered (**15 years**) and one imposed (**20 & 6 @ 85%**) at the conclusion of a jury trial.' " See *id.* at 78.

Within this quote, defendant inserted, in bolded parentheses, what appears to be the alleged plea offer he received and the sentence imposed following his jury trial. Defendant was allegedly offered a 15-year sentence in the face of a potential sentence of 30 to 65 years.

¶ 15    Defendant further argued in his petition, "[j]ust as the trial court in Dennis failed to provide any reasoning for imposing a significantly longer sentence than what was offered during plea negotiations, here the trial judge failed to explain why the sentence was 11 years longer than what was offered during negotiations." Defendant then stated, "**THE RECORD CONTAINS NO INDICATION – HOWEVER – AS REQUIRED BY THE ACT THIS CLAIM IS SUPPORTED BY AN AFFIDAVIT.**"

¶ 16    The circuit court appointed the public defender to represent defendant and advanced his petition to second-stage proceedings under the Act. On October 23, 2013, a new assistant public defender ("PD 3") was named as defendant's postconviction counsel. On August 7, 2014, PD 3 informed the court that he had a conversation with defendant and had finished reviewing the record.

¶ 17    On March 5, 2015, another public defender ("PD 4") informed the court that she had acquired defendant's case from PD 3. PD 4 served as defendant's postconviction counsel for the remainder of the case. PD 4 stated that she was trying to locate and contact four witnesses who were "pertinent to this postconviction based upon the petition that was filed."

¶ 18    On May 7, 2015, PD 4 stated that she had received the trial file from private counsel who represented defendant at trial. She scheduled a conference call with that attorney to "peruse and assess" the allegations raised by defendant in his postconviction petition.

¶ 19    On July 9, 2015, PD 4 stated that she was "in the process of procuring the affidavits and the exhibits to supplement Mr. Jenkins' petition."

¶ 20    On April 28, 2016, PD 4 stated that she was "attempting to procure the affidavit from family members regarding Mr. Jenkins' allegations in his post-conviction petition."

¶ 21    On June 30, 2016, PD 4 stated that she and the State had agreed to a continued date to allow her "to procure the affidavit from Mr. Jenkins' mother."

¶ 22    On August 11, 2016, PD 4 requested a continuance to complete her 651(c) certificate. She further stated, "I have an affidavit that I'm trying to prepare from a witness."

¶ 23    On October 13, 2016, PD 4 stated that she had almost completed her requirements under Rule 651(c), but a couple issues arose since she reviewed the trial file from trial counsel.

¶ 24    On December 15, 2016, PD 4 stated that she had intended to file her 651(c) certificate that day but requested a continuance to "obtain the affidavit I need."

¶ 25    On February 23, 2017, PD 4 stated, "I have not procured the affidavit from the witness that the defendant is relying on to support his constitutional violation."

¶ 26    On June 14, 2017, PD 4 stated that she met with defendant at the prison the previous day. She requested a continuance to file a "supplement" and her 651(c) certificate.

¶ 27    On November 1, 2017, PD 4's colleague appeared on her behalf and stated that she was still waiting for an affidavit.

¶ 28    On February 21, 2018, PD 4 stated, "I'm still in the process of the investigation attempting to secure the affidavit necessary for me to file my 651C."

¶ 29    On April 10, 2018, PD 4 stated, "I have completed my investigation and my research. I'm just waiting on an affidavit which is kind of difficult for me to obtain, but I'm in the process with my investigator." She requested a date to complete her filing with a 651(c) certificate.

¶ 30    On May 10, 2018, PD 4's colleague appeared on her behalf and stated that she was still attempting to obtain "some affidavits" before filing her 651(c) certificate.

¶ 31    On October 25, 2018, PD 4's colleague stated that she had transferred to another unit in the public defender's office and requested a continuance for another attorney to be assigned to represent defendant. The record does not indicate that another attorney was ever assigned to defendant's case.

¶ 32    On December 5, 2018, PD 4's colleague appeared and filed PD 4's 651(c) certificate on her behalf. The circuit court found the certificate inadequate.

¶ 33    On January 15, 2019, PD 4 appeared in court and filed her 651(c) certificate. In her amended certificate, counsel stated that she consulted with defendant by phone and in correspondence to ascertain his contentions of deprivations of his constitutional rights, and she examined the pertinent portions of the report of proceedings and common law record from defendant's case. Counsel further stated, "I have examined the Petitioner's, *pro se* postconviction

petition. There are no required amendments to his petition for a necessary and adequate presentation of Petitioner's contentions."

¶ 34    On May 22, 2019, the State filed a lengthy written motion to dismiss defendant's postconviction petition. Initially, the State asserted that defendant's petition was untimely filed and that he failed to explain the reason for his delay. The State acknowledged that when defendant filed his *pro se* petition in 2013, the Act did not state the time frame for filing a petition where a defendant filed a direct appeal but did not file a petition for leave to appeal with the Illinois Supreme Court or a petition for *certiorari* with the United States Supreme Court. The State pointed out that our supreme court addressed this issue in *People v. Johnson*, 2017 IL 120310 (Jan. 20, 2017), and held that a postconviction petition must be filed within six months of the date for filing a petition for leave to appeal. *Id.* ¶ 24. The State calculated that defendant's petition was due by November 25, 2011, and thus, his petition filed on May 17, 2013, was nearly 18 months late. The State argued that because defendant filed his petition late and did not argue that his untimely filing was not due to his culpable negligence, the circuit court should dismiss his petition.

¶ 35    Alternatively, the State argued that defendant failed to make a substantial showing that either his trial or appellate counsel were ineffective, or that he was penalized for demanding a jury trial. The State argued that defendant's claims that his trial counsel was ineffective for failing to call an exculpatory witness or preserve issues for appeal lacked the required specificity, and therefore, were without merit. It further argued that defendant's claim that counsel failed to subject his case to meaningful adversarial testing was refuted by the record which showed counsel conducted a "very robust" defense. The State also argued there was no merit to defendant's claims that his appellate counsel was ineffective for failing to raise issues on direct appeal regarding

identification and probable cause for his arrest because neither issue had merit. In addition, the State argued there was no merit to defendant's allegation that the trial court erred when it denied his motion for a new trial because those claims challenged the sufficiency of the evidence, which was not a cognizable claim under the Act.

¶ 36     Finally, the State argued there was no merit in defendant's allegation that his sentence was punishment for exercising his right to a jury trial. The State asserted that this issue was forfeited because it was not raised on direct appeal. Alternatively, the State argued defendant was unable to show that the trial court participated in the formulation of the plea offer and that there was a great disparity between the sentence offered and the one received. The State pointed out that the record was silent as to any offer made to defendant. It noted that the only indication an offer was made was from defendant's affidavit which indicated the State made the offer, not the trial court.

¶ 37     PD 4 requested a continuance to file a reply to the State's motion.

¶ 38     On June 27, 2019, PD 4 stated that she reviewed the State's motion to dismiss and had spoken with defendant. She further stated, "we are not filing a reply."

¶ 39     On October 7, 2019, PD 4 stated that she was standing on defendant's petition without further argument. The State also rested on its motion to dismiss without further argument. The court stated that it would read the pleadings and schedule a date for its ruling. While discussing the scheduling, PD 4 stated that she was working from 11 p.m. to 7 a.m. in her current unit and checked her schedule to find a date when she was available to attend court during the day.

¶ 40     On November 12, 2019, the circuit court granted the State's motion to dismiss defendant's postconviction petition. Initially, the court found "[a]s a preliminary matter" that defendant's petition was untimely. The court acknowledged that the Act did not specify a deadline for

defendant to file his petition when he did not file a petition for *certiorari* or leave to appeal but noted the supreme court's holding in *Johnson*, which was filed in 2017, that a postconviction petition must be filed within six months of the date for filing a petition for *certiorari* or leave to appeal. The court found that defendant's petition was filed nearly a year and a half late and that he had not provided any explanation for his untimeliness.

¶ 41 Thereafter, in a lengthy written order, the circuit court thoroughly addressed each of defendant's substantive claims in detail, separating them into issues and sub-issues. At the end of its analysis for each issue and sub-issue, the court stated that the State's motion to dismiss that particular claim was granted.

¶ 42 When discussing defendant's final allegation, that his sentence was punishment for exercising his right to a jury trial, the court referred to defendant's affidavit as his "proof of a plea offer." The court quoted defendant's averment that his mother had stated that counsel informed her at the beginning of trial that the State had offered a 15-year sentence in exchange for a guilty plea. The court found the claim forfeited because defendant could have raised it on direct appeal. Alternatively, the court found the allegation conclusory. The court found that defendant failed to demonstrate that the State ever made a pretrial plea offer. The court pointed out that defendant did not allege that he would have accepted the plea offer had counsel advised him of it. The court found that it was "left to indulge in complete speculation about potential, alternative results," which was an unworkable task. The court stated that it was unclear if plea discussions would even have been available to defendant, finding that aside from defendant's self-serving testimony, there was no evidence that the State ever even extended or would have contemplated extending a plea offer. Further, ascertaining whether a plea offer would have been more advantageous for defendant

was problematic because plea agreements often turn on a variety of factors and peculiar circumstances. The court noted that defendant's sentence was only five years more than the alleged plea offer and found no great disparity between a 15-year and 20-year sentence. Accordingly, the court found no merit in defendant's claim. The circuit court concluded that all of defendant's allegations were frivolous and patently without merit, and on that basis, granted the State's motion to dismiss his postconviction petition.

¶ 43    On appeal, defendant contends PD 4 failed to provide reasonable assistance as his postconviction counsel because she did not amend his *pro se* petition. Defendant contends she should have added an allegation to his petition asserting that trial counsel rendered ineffective assistance during "plea bargaining" when counsel failed to notify defendant of the 15-year plea offer referred to in his affidavit. Defendant also argues PD 4 should have added an argument that defendant was not culpably negligent for the untimely filing of his petition. Finally, defendant claims she should have obtained new affidavits from him and his mother to support these two additional arguments.

¶ 44    The State responds that by filing the 651(c) certificate, postconviction counsel invoked the rebuttable presumption that she provided defendant with reasonable assistance. The State argues that defendant failed to meet his burden to overcome that presumption where the record supports the presumption and refutes defendant's arguments against postconviction counsel.

¶ 45                                ANALYSIS

¶ 46                           Standard of Review

¶ 47    We review the circuit court's dismissal of a postconviction petition without an evidentiary hearing *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24. The interpretation of a supreme court rule,

including whether counsel fulfilled her duties under Rule 651(c), is also reviewed *de novo*. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007). The reviewing court may affirm the circuit court's dismissal of a postconviction petition on any basis shown in the record. *People v. Davis*, 382 Ill. App. 3d 701, 706 (2008).

¶ 48   A postconviction proceeding is not a substitute for a direct appeal, but instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v. Harris*, 224 Ill. 2d 115, 128 (2007). Defendant must demonstrate that he suffered a substantial deprivation of a constitutional right in the proceeding that produced his conviction or sentence to be entitled to postconviction relief. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 49   At second-stage of postconviction proceedings, the State may move to dismiss the petition. *See People v. Landa*, 2020 IL App (1st) 170851, ¶ 42. The court should dismiss the petition only "'when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing' of a constitutional violation." *Id.* (quoting *People v. Coleman*, 183 Ill. 2d 366, 382 (1998)). All well-pled facts must be taken as true unless they are rebutted by the record. *Id.*

¶ 50   Furthermore, at second-stage postconviction proceedings, an indigent defendant is entitled to representation by appointed counsel. 725 ILCS 5/122-4 (West 2012); *People v. Lander*, 215 Ill. 2d 577, 583 (2005). Postconviction counsel is required to provide defendant with a "reasonable level of assistance." *Cotto,* 2016 IL 119006, ¶¶ 41-42.

¶ 51   Pursuant to Rule 651(c), postconviction counsel has a duty to consult with defendant to ascertain his contentions of constitutional deprivation, examine the trial record, and, where

necessary, amend the *pro se* petition to adequately present defendant's contentions. *Pendleton*, 223 Ill. 2d at 472. Compliance with these duties may be shown by a certificate filed by postconviction counsel. Ill. S. Ct. R. 651(c); *Lander*, 215 Ill. 2d at 584. Counsel's substantial compliance with Rule 651(c) is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. A Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel rendered reasonable assistance. *Id.*, ¶ 19.

¶ 52    Here, postconviction counsel PD 4 filed a Rule 651(c) certificate stating that she consulted with defendant by phone and in correspondence to ascertain his contentions of deprivations of his constitutional rights and examined the pertinent portions of the report of proceedings and common law record from defendant's case. Counsel further stated, "I have examined the Petitioner's, *pro se* Post-Conviction petition. There are no required amendments to his petition for a necessary and adequate presentation of Petitioner's contentions." Accordingly, the presumption exists that counsel provided defendant with the reasonable level of assistance required by the rule. The burden, therefore, is on defendant to rebut this presumption by demonstrating that PD 4 failed to substantially comply with the duties required by Rule 651(c). *Id.*

¶ 53                    First Issue: Ineffective Assistance of Postconviction Counsel

¶ 54    Defendant first contends that PD 4 provided unreasonable assistance because she failed to amend his *pro se* petition by adding an allegation that trial counsel rendered ineffective assistance during "plea bargaining" when counsel failed to notify defendant of the 15-year plea offer made by the State. While he did not use the term "ineffective assistance" of trial counsel in his petition, defendant points out that in his affidavit he stated that trial counsel informed his mother of the offer at the beginning of trial but never advised him of the offer. Defendant argues that because

the claim was not raised as an allegation within the body of his petition, PD 4 was obligated to add the allegation by shaping it into the appropriate legal form with citation to relevant legal authority. Defendant claims that because PD 4 did not do so, the circuit court did not consider the issue before dismissing his petition. Defendant argues that the claim likely would have been meritorious because the record shows defense counsel and the State were involved in plea negotiations. He further argues there was a reasonable probability he would have accepted the 15-year offer in the face of a potential sentence of 30-65 years. We note that defendant was a juvenile but was tried as an adult. Nothing in the record suggests that his age or any other intervening factor would have prevented him from being able to assess and decide on a plea offer from the State if it had been conveyed to him by his attorney. We further emphasize the utmost importance of this right, given the serious impact it has on a criminal defendant's freedom, potentially for the rest of his life. In the present case, defendant has established that there was a meaningful difference between the State's offer of a 15-year sentence and the potential maximum sentence he faced; furthermore, the 15-year difference is even more significant given the years of freedom that a juvenile defendant stands to lose at the start of his adult life, and the impact that has on his future.

¶ 55 The State responds that there is no merit to defendant's claim that postconviction counsel was unreasonable because his allegation was already included in his petition in his affidavit. The State points out that defendant also raised the allegation in the conclusion of his petition when he stated that the trial court "did nothing to remedy the gross misunderstanding which resulted from counsel's errors and advice at the plea." The State argues that the circuit court considered the allegation at length before dismissing the petition. Therefore, according to the State, defendant cannot show he was prejudiced by counsel's failure to amend the petition to add a claim that was

already presented. The State further asserts that defendant presented no evidence that the State ever made an offer. It argues that the record clearly shows that postconviction counsel investigated defendant's claims over an extended period, and her investigation may have revealed no offer was ever made.

¶ 56    Pursuant to Rule 651(c), counsel is obligated to amend defendant's *pro se* petition only where it is necessary to properly present his claims. *Pendleton*, 223 Ill. 2d at 472. Compliance with the third duty under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. *Id.*; *Profit*, 2012 IL App (1st) 101307, ¶ 23. Nor does Rule 651(c) require counsel to bolster every claim raised in defendant's petition, regardless of its legal merit, or to present every witness or shred of evidence defendant believes potentially supports his claims. *People v. Custer*, 2019 IL 123339, ¶ 38. If amending a *pro se* petition would do nothing more than further a frivolous or patently nonmeritorious claim, then it is not a "necessary" amendment within the meaning of Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 23. Although postconviction counsel may raise additional claims if she so chooses, counsel is under no obligation to do so. *Pendleton*, 223 Ill. 2d at 476. We also note that in a recent unpublished decision, we reversed the trial court's second-stage dismissal of the defendant's petition on the grounds that postconviction counsel failed to amend the *pro se* petition and thus failed to render the requisite reasonable level of assistance required by the Act, when she belatedly attempted to orally raise new constitutional claims without properly presenting them for consideration by the court. *See People v. Martez Smith*, 2022 IL App (1st) 210909-U (Jan. 23, 2023).

¶ 57    Here, the record shows that in the fourth allegation in his *pro se* petition, when he alleged that his sentence was punishment for invoking his right to a jury trial, defendant claimed the State

had offered him a 15-year sentence during plea negotiations. Defendant expressly stated that his claim was supported by his affidavit. In the affidavit, defendant clearly averred that trial counsel had informed his mother of the State's 15-year offer at the beginning of trial, but never advised him of the offer. The trial record shows that when Adam was trial counsel, the parties were engaged in plea discussions for several months and were attempting to schedule a 402 conference. It is unclear from the record whether a conference ever occurred or that an offer was ever made at that time. Adam withdrew, and two months later, Thedford began representing defendant. Eight months later, defendant's jury trial began. It is uncertain whether Thedford was ever involved in plea negotiations with the State.

¶ 58    The record reveals that for more than three years, postconviction counsel PD 4 investigated the claims raised in defendant's *pro se* postconviction petition. She consulted with defendant and met with him at the prison. She obtained the trial file from Thedford and scheduled a conference call with him to "peruse and assess" the allegations raised by defendant in his postconviction petition. On numerous court dates, PD 4 expressly stated that she was attempting to contact witnesses and obtain affidavits "to supplement Mr. Jenkins' petition." She specifically stated that she was attempting to procure an affidavit "from family members" and "from Mr. Jenkins' mother." The record further reflects that PD 4 was having difficulty obtaining the affidavits she needed. On February 21, 2017, she stated, "I have not procured the affidavit from the witness that the defendant is relying on to support his constitutional violation." Over a year later, on April 10, 2018, she stated that she had completed her investigation and research but was waiting for an affidavit that was "kind of difficult" to obtain. About eight months later, after obtaining no

affidavits, PD 4 filed her 651(c) certificate, concluding that defendant's *pro se* petition did not require any amendments to adequately present his contentions.

¶ 59    The record suffices to show that there was more than a frivolous, nonmeritorious claim underlying defendant's assertion that trial counsel provided ineffective assistance by failing to convey and discuss with defendant the State's 15-year plea offer. When the circuit court reviewed defendant's petition, it quoted his averment that his mother had stated that counsel informed her at the beginning of trial that the State had offered a 15-year sentence in exchange for his guilty plea. The court considered defendant's allegation but found it conclusory because defendant failed to demonstrate that an offer was ever made. The court pointed out that defendant did not allege that he would have accepted the plea offer had trial counsel advised him of it. There was enough in defendant's petition to indicate that this was an issue postconviction counsel had a duty to explore, and the investigation she undertook, as summarized above, should have revealed whether this was a meritorious claim that she had a duty to pursue. If so, then she was further required to provide reasonable assistance in developing this claim, which might have ameliorated the deficiencies in defendant's pleadings that the circuit court identified. If defendant provided insufficient support for a valid claim of ineffective representation, that does not excuse postconviction counsel from investigating and, depending on the outcome of those efforts, amending the petition to support that claim. It is unclear from the record why, over the course of postconviction counsel's efforts to investigate defendant's claims, she did not address the deficiencies identified by the circuit court.

¶ 60    Our supreme court has stated that a criminal defendant "personally possesses a constitutional right to elect what plea to enter." *People v. Williams*, 2016 IL App (4th) 140502, ¶

33 (citing *See People v. Phillips*, 217 Ill.2d 270, 281 (2005)). At the core of this right is "the constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State." *Id*; see also *People v. Hale*, 2013 IL 113140, ¶ 16; *People v. Curry*, 178 Ill. 2d 509, 528 (1997). If the record does not state what a defendant was told regarding a plea offer from the State, the trial could be reversed, even where there were no other errors. *Williams*, 2016 IL App (4th) at ¶ 33. This right does not go away merely because a defendant is a juvenile; we find nothing to stand for that proposition, and furthermore, nothing to indicate that a juvenile tried as an adult and facing sentencing as an adult does not have the same constitutional right as any other criminal defendant to be personally consulted regarding a plea offer.

¶ 61    As the circuit court noted, the failure to inform the defendant about a plea offer might not be ineffective assistance of counsel where the defendant cannot show that this failure prejudiced him. *See Hale*, 2013 IL at ¶ 17. The circuit court found that there was no great disparity between the 15-year offer and the 20 years' imprisonment defendant received at sentencing. Defendant argued in his petition that the sentence he received, of 20 years plus 6 years, to run concurrently, was a significant enough difference that he was prejudiced by not being able to consider the 15-year offer. He now argues that, according to sentencing guidelines, he was potentially facing an aggregate sentence of 30 to 65 years (or 24 to 50 years assuming good conduct credit) at the time that the offer was made, which supports his contention that there is evidence in the record that he would have accepted the offer. While it is true that the disparity between the offer and his actual sentence is not the 38 to 76 years difference in *Dennis*, the court in *Dennis* wrote that its finding of a constitutional violation was limited to the facts of that case, where the sentence was

approximately 20 times greater than the plea offer. *Dennis,* 28 Ill.App.3d 74 at 78-79. This case does not stand for the proposition that only a disparity of a comparable size suggests prejudice to a defendant who was not able to consider and accept a plea deal.

¶ 62    Every defendant, no matter his age, has a right to be fully advised of all his options, including being informed of a plea deal offered by the State. In this matter, the defendant was tried as an adult but seemingly not treated as an adult in the plea-bargaining process—it is insufficient that the State's offer was conveyed to his mother if he himself was not apprised of it by trial counsel. A minor defendant's most fundamental liberty interest is at stake when he is tried as an adult, and we have been presented with no authority stating that he is not entitled to the information necessary to make a decision regarding that interest, or even to discuss a decision with the adult tasked with representing him. *See People v. McGee¸* 2012 IL App (2d) 190040, ¶ 32 ("[A] criminal defendant personally possesses a constitutional right to elect what plea to enter."); *People v. Williams¸* 2016 IL App (4th) 140502, ¶ 33 ("A criminal defendant has the constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a plea offer.") By not being personally informed of the State's plea offer, and therefore deprived of the ability to make a fully informed decision regarding the next several years of his future, Defendant received ineffective assistance of counsel at the trial court level. He had an absolute right to know about any plea discussions and he was deprived of that right. This error was further compounded by postconviction counsel's failure to develop this claim at second stage proceedings. The circuit court identified deficiencies in defendant's postconviction claim on this issue; reasonably diligent postconviction counsel should have made an effort to bolster this non-frivolous, potentially

meritorious claim, rather than leaving it as-is. We find therefore find that the circuit court erred in its decision dismissing defendant's postconviction petition.

¶ 63 We further reject the dissent's speculation as to how PD 4's conversation with defendant's mother might have gone, and the reasons for which PD 4 might have found it unnecessary or unproductive to continue discussions with Jenkins himself. The record does not support any of the dissent's suggestions, and even if his mother stated that she brought the plea deal to Jenkins' attention, this does not excuse trial counsel from his responsibility as his counsel to present the offer to him directly. Given the importance of the liberty interest at stake, it was incumbent upon trial counsel to make sure that defendant was apprised of and understood the offer, and it would not have been reasonable for her to rely on his mother as an intermediary. If, as the dissent supposes, there could have been something to come from PD 4's conversation with Jenkins' mother that explained why counsel did not take the offer to defendant directly, then PD 4's failure to procure an affidavit from his mother is all the more serious. Additionally, we found the significant disparity between the State's offer and the potential sentence defendant was facing, which he identifies in his petition, to support our decision that defendant has stated more than a frivolous, nonmeritorious claim, contrary to the dissent's position.

¶ 64 Based on this record, we find that postconviction counsel provided unreasonable assistance when she concluded it was not necessary to amend defendant's *pro se* petition to add or bolster his claim that trial counsel rendered ineffective assistance during plea negotiations. The defects we have discussed sufficiently overcome the rebuttable presumption that counsel provided reasonable assistance.

¶ 65 Second Issue: Untimely Filing of the Postconviction Petition

¶ 66    Defendant next contends PD 4 provided unreasonable assistance because she failed to amend his *pro se* petition by adding an argument that his late filing was not due to his culpable negligence. When defendant filed his petition in May 2013, the Act's filing provision stated, in relevant part:

"When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012).

¶ 67    Here, defendant filed a direct appeal but did not file a petition for leave to appeal with the Illinois Supreme Court or a petition for *certiorari* with the United States Supreme Court. Defendant's direct appeal was decided on March 24, 2011. Defendant filed a petition for rehearing which this court denied on April 20, 2011. Defendant's deadline to file a petition for leave to appeal with our supreme court was 35 days from the denial of his petition for rehearing, which was May 25, 2011. Ill. S. Ct. R. 315(b) (eff. Feb. 26, 2010). In *Johnson*, our supreme court held that a postconviction petition must be filed within six months of the date for filing a petition for leave to appeal. *Johnson*, 2017 IL 120310, ¶ 24. The parties agree that defendant's petition was

due by November 25, 2011 pursuant to the *Johnson* holding, and was actually filed on May 17, 2013. However, the petition was filed approximately three years before the *Johnson* decision would clarify the six-month deadline for the filing a postconviction petition.

¶ 68    Defendant points out that on the first page of his petition, he stated that the Act did not clearly identify the deadline for filing a postconviction petition when a petition for leave to appeal was not filed. He argues his statement suggests that the Act's ambiguity regarding the deadline explained his delay in filing. Defendant acknowledges that our supreme court resolved the ambiguity in *Johnson* when it found the deadline was six months. He argues, however, that he filed his petition more than three years before *Johnson* was decided.

¶ 69    The State responds that, although defendant's petition was untimely filed, the circuit court considered each claim raised in the petition on the merits. Consequently, defendant cannot show he was prejudiced by counsel's failure to amend his petition because the result would not have been any different if counsel had included an argument that he was not culpably negligent. Therefore, defendant did not satisfy his burden of overcoming the presumption that postconviction counsel provided reasonable assistance. The State also points out that in *Johnson*, the supreme court found that the ambiguity in the statute did not excuse the defendant's late filing because ignorance of the law does not excuse such delay.

¶ 70    Postconviction proceedings must be initiated within the time limitations specified in section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2012)), unless defendant alleges facts showing the delay in filing his petition was not due to his culpable negligence. *Lander*, 215 Ill. 2d at 586. Our supreme court defined "culpable negligence" as conduct greater than ordinary negligence and akin to recklessness. *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). It is solely

defendant's obligation to know the time limitations for filing his postconviction petition, and his ignorance of the law or his legal rights will not excuse a delay in filing. *Lander*, 215 Ill. 2d at 588-89.

¶ 71    We find that our supreme court's reasoning in *Cotto* governs our decision here. In *Cotto*, the defendant, through privately retained counsel, filed a postconviction petition more than a year and a half late. *Cotto*, 2016 IL 119006, ¶ 44. The circuit court advanced the petition to second-stage proceedings. *Id.* ¶ 12. The State moved to dismiss the petition arguing that it was untimely and that the defendant failed to allege that the untimely filing was not due to his culpable negligence. *Id.* The State further argued that none of the substantive claims made a substantial showing of a constitutional violation. *Id.* In response, postconviction counsel argued that the untimely filing was not due to the defendant's culpable negligence because trial counsel failed to inform the defendant about the appellate court's decision on direct appeal. *Id.* ¶ 13. When reviewing the petition, the circuit court evaluated the merits of the defendant's substantive claims, concluded that he did not make a substantial showing of a constitutional violation, and on that basis, granted the State's motion to dismiss the petition. *Id.* ¶ 48. The court did not indicate that the dismissal was based on the petition's untimely filing. *Id.* ¶ 14.

¶ 72    On appeal, the defendant argued that his postconviction counsel failed to provide him with reasonable assistance during second-stage proceedings because counsel failed to adequately explain that the delay in filing his petition was not due to his culpable negligence. *Id.* ¶¶ 15, 49. The appellate court rejected that argument and affirmed the circuit court's dismissal. *Id.* ¶15. Cotto appealed to the supreme court.

¶ 73    The supreme court rejected Cotto's argument that his postconviction counsel failed to provide him with reasonable assistance. The court noted that Cotto failed to explain what additional information postconviction counsel should have included regarding the timeliness issue. *Id.* ¶ 50. The court further reasoned, "critically, the record demonstrates that defendant's petition was not dismissed as untimely. The trial court reviewed defendant's claims on their merits with no mention of the petition's late filing." *Id.* Under those circumstances, the court found no deficiency in postconviction counsel's representation. *Id.* ¶ 51.

¶ 74    Here, the record shows that the circuit court found "[a]s a preliminary matter" that defendant's postconviction petition was untimely. However, the court further found that if defendant's claims were not procedurally barred, "they would be dismissed because they are frivolous and patently without merit." The court continued its written order for an additional 10 pages, thoroughly addressing each substantive claim raised in defendant's petition as a separate issue or sub-issue. As we have explained above, we disagree with the circuit court's disposition of defendant's claim of ineffective assistance of counsel regarding plea bargaining.

¶ 75    We further find that Jenkins validly raised the argument that he was not negligent in the timing of his filing. We agree that he could not have known in 2013 that our supreme court would clarify the timeliness requirement of postconviction proceedings in its 2017 *Johnson* decision. Indeed, unlike the petitioner in *Johnson*, Jenkins suggested in this *pro se* petition that this statutory ambiguity was the cause-in-fact of his failure to timely file his petition. Thus, PD 4 provided unreasonable assistance because she failed to amend his *pro se* petition by adding an argument that his late filing was not due to his culpable negligence.

¶ 76                                    Failure to Obtain New Affidavits

¶ 77    A separate matter relating to defendant's first two issues of ineffective assistance of counsel is his claim that postconviction counsel failed to obtain new affidavits from him and his mother to support the allegations above that trial counsel failed to advise him of the State's 15-year plea offer, and that he was not culpably negligent for his untimely filing. Defendant states that his original affidavit was missing important details about the offer such as when it was made, what offense he would have pled to, how counsel misunderstood the offer, and that he would have accepted the offer. He also states he needed to provide a new affidavit stating that the ambiguity in the statute was the reason he filed his petition late. Defendant asserts there is no indication in the record that counsel attempted to procure affidavits from him or his mother. He states that counsel never told the court that she had tried, but failed, to obtain his mother's affidavit. He further claims counsel filed her 651(c) certificate and told the court she was working from 11 p.m. to 7 a.m. because she was trying to close his case after transferring to another unit, not because she made reasonable, but unsuccessful, attempts to obtain affidavits from him and his mother.

¶ 78    In contrast to defendant's claim above, the record shows that counsel did make some attempts to procure affidavits from witnesses and family members to support the claims in defendant's petition, despite defendant's claim that she did not. On June 30, 2016, counsel specifically stated that she was attempting "to procure the affidavit from Mr. Jenkins' mother." On February 23, 2017, counsel stated, "I have not procured the affidavit from the witness that the defendant is relying on to support his constitutional violation." On April 10, 2018, counsel reported that she had completed her investigation and research, and stated, "I'm just waiting on an affidavit which is kind of difficult for me to obtain, but I'm in the process with my investigator." The record

thus shows that counsel was unsuccessful in obtaining the affidavits she believed she needed to support defendant's claims, including an affidavit from his mother.

¶ 79    It is unclear why postconviction counsel was unable to procure an affidavit from defendant's mother, which seemingly would have provided support for the defendant's claim that trial counsel only discussed the State's plea offer with her, and not with defendant, with no indication that the juvenile defendant would have been incapable of understanding the terms and consequences of the offer. There is no reason given as to why defendant's mother could not be located or could not produce an affidavit. Trial counsel was apparently able to locate and speak with her in order to convey the plea offer to her; there is no explanation as to why, over the course of approximately three years, postconviction counsel could not obtain a statement from her about this discussion. As discussed above, we find that the deficiencies in defendant's claim of ineffective assistance of trial counsel, as identified by the circuit court, should have been cured has postconviction counsel met her duty of providing reasonable assistance. In line with that finding, as well as our discussion of defendant's first contention, defendant has sufficiently shown that postconviction counsel failed to substantially comply with Rule 651(c). Despite facing the consequences of an adult criminal defendant, defendant was not afforded the same constitutional rights as an adult in his position, and this serious error should have been more diligently explored by postconviction counsel.

¶ 80    Based on the record and circumstances in this case, we are able to reach a conclusion without going further into the remaining arguments in defendant's *pro se* petition. We find that postconviction counsel's representation was substantially deficient for the reasons discussed

above. Accordingly, we conclude that defendant did not receive the reasonable assistance of postconviction counsel contemplated by the Act.

¶ 81                                    CONCLUSION

¶ 82    For these reasons, we reverse the judgment of the circuit court of Cook County dismissing defendant's postconviction petition during second-stage proceedings, and remand the matter back to the circuit court to hold second-stage proceedings, with new postconviction counsel for the defendant.

¶ 83    Reversed and remanded.

¶ 84    JUSTICE LAVIN, dissenting:

¶ 85    Defendant solely asserts on appeal that appointed counsel did not provide reasonable assistance as required by Illinois Supreme Court Rule 651(c) (Feb. 6, 2013). Defendant has not developed any argument asserting that the circuit court's judgment on the merits of his claims was erroneous.

¶ 86    Yet, the majority holds that "the circuit court erred in its decision dismissing defendant's postconviction petition" because "there was more than a frivolous, nonmeritorious claim underlying defendant's assertion that trial counsel provided ineffective assistance by failing to convey and discuss with defendant the State's 15-year plea offer." The majority also states:

> By not being personally informed of the State's plea offer, and therefore deprived of the ability to make a fully informed decision regarding the next several years of his future, Defendant received ineffective assistance of counsel at the trial court level.

The foregoing determinations resolve issues not raised by defendant on appeal and do not reflect the standard that applies when reviewing a claim that appointed postconviction counsel failed to provide reasonable assistance.

¶ 87    As the majority acknowledges, a rebuttable presumption exists that appointed counsel provided reasonable assistance in this case. Defendant has not overcome that presumption.

¶ 88    According to defendant's allegations, his mother said that "at the begining [sic] of trial, counsel informed her that the state had offered a 15 year sentence in exchange for plea of guilt, but he misunderstood how this offer was made and whether it would be at 85%." In addition, defendant alleged that trial counsel, "never advised me of this offer, directly affecting the consequences of the proceedings."

¶ 89    The record indicates that appointed counsel was attempting to procure, among other things, an affidavit from defendant's mother. While appointed counsel ultimately did not do so, we cannot assume this resulted from counsel's failing.

¶ 90    Appointed counsel may very well have spoken with defendant's mother and learned that her account was problematic. For example, his mother may have informed counsel that the offer only pertained to certain counts, leaving others unresolved. His mother may have stated that she brought this offer to defendant's attention shortly after learning of it but that defendant nonetheless preferred trial. Additionally, his mother may have stated that she had told defendant no such thing. Moreover, appointed counsel could have encountered other evidence showing the State never made an offer.

¶ 91    In short, defendant cannot overcome his burden of rebutting the presumption that counsel provided reasonable assistance in this regard. The majority states that "reasonably diligent postconviction counsel should have made an effort to bolster this non-frivolous, potentially meritorious claim, rather than leaving it as-is." Yet, the majority fails to recognize the possibility that counsel's diligent efforts uncovered nothing to bolster the claim with. *People v. Greer*, 212

Ill. 2d 192, 205 (2004) (stating that "[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of [Rule 651(c)").

¶ 92    Accordingly, I would affirm the judgment.